# ORIGINAL

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

SOFTCHOICE CORPORATION,

        Plaintiff,

v.

SHI INTERNATIONAL CORPORATION,
MICHAEL BRITTON, HEATH FIEDLER,
JOSH FRUEHAN, PHIL WILHELM, RYAN
SHEEHAN, AND RYAN FORD

        Defendants.

**3-10CV-20320**

CIVIL ACTION NO. _____

**JURY DEMANDED**

44028

## COMPLAINT

Plaintiff Softchoice Corporation ("Softchoice"), by and through its undersigned counsel,
brings the following Complaint against Defendants Michael Britton ("Britton"), Heath Fiedler
("Fiedler"), Josh Fruehan ("Fruehan"), Phil Wilhelm ("Wilhelm"), Ryan Sheehan ("Sheehan"),
Ryan Ford ("Ford") (collectively "Defendant Employees"), and SHI International Corporation
("SHI") (collectively "Defendants"), and states and alleges as follows:

### INTRODUCTION

1.     Over the last three years, SHI has systematically raided dozens of sales employees
from Softchoice's branch offices across the United States. Moreover, SHI has and continues to
misappropriate and use Softchoice's confidential, proprietary, and/or trade secret information to
lure away Softchoice's customers. SHI's raiding of Softchoice's employees and customers
violates several non-solicitation, non-disclosure, and other confidentiality agreements, and
statutory and common law.

2.     Softchoice has tried in good faith to resolve these issues short of litigation, but despite repeated assurances that it would not engage or would cease engaging in such behavior, SHI has not relented.  Rather, SHI, with its over $3 billion in revenues, has continued its scheme resulting in mounting monetary and non-monetary damages and harm to Softchoice's business, leaving Softchoice no choice but to seek the relief of the courts.

3.     In Texas, Defendants have conspired to misappropriate confidential, proprietary and trade secret information belonging to Softchoice, have conspired to and participated in the breach of Softchoice's confidentiality and nonsolicitation agreements with Softchoice's present and former employees, and have improperly solicited business away from Softchoice.  Further, Defendants have unlawfully solicited and continue to improperly solicit a number of Softchoice customers by misappropriating and improperly using Softchoice's confidential, proprietary or trade secret information and directing other SHI employees to solicit business from Softchoice customers that Defendant Employees had serviced while employed by Softchoice.

4.     In sum, Defendant Employees have (1) misappropriated confidential, proprietary and trade secret information relating to Softchoice and its business and customers; (2) engaged in, and intend to continue engaging in, additional solicitation of Softchoice's customers and employees; and (3) SHI and its managers have encouraged, ratified, and collaborated with Defendant Employees in carrying out these actions.

## PARTIES AND JURISDICTION

5.     Softchoice is a New York corporation with its principal place of business in Chicago, Illinois.  Softchoice is a wholly-owned subsidiary of Softchoice Corporation, a Canadian corporation.  Softchoice is authorized to do business in the State of Texas.

6.      Britton is a former employee of Softchoice who is now working for SHI.  Britton resides in 1710 Damian Way, Richardson, Texas, 75081.

7.      Fiedler is a former employee of Softchoice who is now working for SHI.  Fiedler resides in 2529 Royal Troon Drive, Plano, Texas, 75025.

8.      Fruehan is a former employee of Softchoice who is now working for SHI. Fruehan resides in 6107 Castle Peak Lane, League City, Texas, 77573.

9.      Wilhelm is a former employee of Softchoice who is now working for SHI. Wilhelm resides in 150 Gessber Road, Houston, Texas, 77024.

10.     Sheehan is a former employee of Softchoice who is now working for SHI. Sheehan resides in 404 Oakcrest Drive, Cedar Park, Texas, 78613.

11.     Ford is a former employee of Softchoice who is now working for SHI.  Ford resides in 1703 Travis Heights Boulevard, Austin, Texas, 78704.

12.     SHI is a New Jersey corporation with its principle place of business located in Piscataway, New Jersey.

13.     This Court has original jurisdiction over this action pursuant to the diversity of citizenship provisions contained in 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

14.     Venue is placed in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the events giving rise to the claims occurred in this district.

## SOFTCHOICE'S CONFIDENTIAL AND TRADE SECRET INFORMATION

15.     Softchoice is a direct marketer and reseller of information technology (IT) infrastructure solutions, including hardware, software, and various infrastructure management

services.   SHI provides many of the same products and services as Softchoice, and is a direct competitor of Softchoice.

16.     Softchoice invested and continues to invest considerable resources to develop information, methods, and techniques to:  (a) identify customers that utilize IT equipment and services; (b) develop, maintain, and nurture a business relationship with those entities and individuals; (c) learn customers' business and technological needs; (d) develop innovative solutions to satisfy those needs; and (e) set appropriate pricing to attract and maintain customers.

17.     The information, methods, and techniques developed, including but not limited to the identity of Softchoice's customers, their contacts, the customers' product mix, preferences, needs, and pricing, are highly confidential, proprietary and/or trade secret information not generally known in the public domain.

18.     The aforementioned information has significant economic value to Softchoice and is or would be of significant economic value to competitors in the industry.

19.     Softchoice takes numerous measures to maintain the safety of its confidential, proprietary and trade secret information, including password protection for access to all computer-based applications, physical security measures to protect hard files, firewalls, and by limiting access to confidential, proprietary and trade secret information to only certain authorized users.

20.     If a competitor of Softchoice had access to information on Softchoice's clients, their specific needs, supplier pricing, pricing strategy, and profit margin, the competitor could easily undercut Softchoice and have a competitive advantage over Softchoice.

21.     In light of this, and to further protect its legitimate business interests with respect to the aforementioned information, Softchoice requires the individuals it employs to sign confidentiality and non-solicitation agreements as a condition of employment.

### SOFTCHOICE'S SMB MARKET

22.     Softchoice's customer base includes small and mid-sized businesses with under 2000 users ("SMB") and enterprise customers with over 2000 users. Softchoice has spent many years and millions of dollars developing customer relationships and sales and marketing strategies. This has particularly been the case with SMB, a core area of Softchoice's business, where Softchoice is a market leader.

### BRITTON'S EMPLOYMENT WITH SOFTCHOICE

23.     On April 24, 2007, Softchoice hired Britton for the position of Outbound Sales Representative in its Dallas, Texas office.

24.     On April 11, 2007, Britton signed an Offer of Employment letter ("Offer Letter") wherein he agreed, *inter alia*, as follows:

> Confidentiality: You acknowledge that by, accepting this position, . . . you will have access to Proprietary Information (as defined below) concerning the Company and its customers and prospective customers. . . . You agree to hold in strict confidence all Proprietary Information and will not disclose any Proprietary Information to anyone outside of the Company. You agree that you will not use, disclose, copy, publish, summarize, or remove from Company premises Proprietary Information . . . . (A copy is attached as Exhibit #1)

25.     In signing the Offer Letter, Britton also agreed, for a period of twelve months following the termination of his employment, not to solicit Softchoice customers with whom he had done business during his tenure with Softchoice and not to recruit any Softchoice employee throughout the same period.

26.     Specifically, the Offer Letter stated that Britton could not:

Directly or indirectly solicit, entice or induce, any customer, potential customer or vendor referral source whom you solicited or did business with on behalf of the Company, or with whom you otherwise became acquainted as a result of my employment with the Company, to become a customer, of any other person. firm or corporation with respect to products and/or services then sold or under development by the Company or competitive with products and/or services then sold or under development by the Company, or to cease doing business with the Company, and you shall not contact or approach any such person, firm or corporation for such purpose or authorize or knowingly approve the taking of such action by any other person.

Directly or indirectly solicit or recruit (or attempt to solicit or recruit) any employee of the Company . . . to terminate such person's employment with the Company, work for a third-party other than the company, work in self-employment or as an independent contractor, or engage in any activity that would cause any such employee to violate any agreement with the Company, except as required to perform your job duties for the Company.

27.     In the Offer Letter, Britton also promised to maintain the secrecy of Softchoice's confidential, proprietary and trade secret information and not to use that information for any purpose other than in his capacity as a Softchoice employee.  Britton expressly agreed that such information includes, but is not limited to:

(i) all client/customer lists and all lists or other compilations containing client, customer or vendor information; (ii) information concerning customer preferences, needs, requirements, business plans, etc.; (iii) information concerning potential customer preferences, needs, requirements, business plans, etc.; . . . (iv) sales plans, strategies, tools, competitive advantages and disadvantages, promotional strategies, discounts, pricing, incentives and the like . . . .

28.     Further, Britton explicitly acknowledged in the Offer Letter that Softchoice had incurred great expense gathering this confidential, proprietary and trade secret information and that it was of great value to Softchoice's business.

29.     In consideration for agreeing to the terms of the Offer Letter, Softchoice implicitly or expressly agreed to, and in fact subsequently did, provide Britton with employment at Softchoice, access to confidential, proprietary and trade secret information concerning

Softchoice's business, and access to and the opportunity to develop relationships with Softchoice's customers.

30.   Britton would not have been allowed to assume employment with Softchoice or been provided with continued access to Softchoice's confidential information and customers if he had not signed the Offer Letter.

31.   On October 8, 2007, Britton also entered into a separate Confidentiality and Non-Solicitation Agreement (the "Agreement") with Softchoice. By the terms of that Agreement, Britton agreed that for a period of one year following the termination of his employment with Softchoice he would abide by confidentiality and non-solicitation terms similar to those in his Offer Letter. (A copy is attached as Exhibit #2).

32.   In consideration for the Agreement, Softchoice implicitly or expressly agreed to, and in fact, subsequently did, provide Britton with continued employment at Softchoice, access to confidential, proprietary or trade secret information concerning Softchoice's business, and access to and the opportunity to develop relationships with Softchoice's customers.

33.   Britton voluntarily resigned from his employment with Softchoice, without prior notice, effective July 29, 2010.

34.   On information and belief, Britton already had accepted a position as an Account Executive with Softchoice's direct competitor, SHI, before he resigned from Softchoice.

35.   On August 6, 2010, Softchoice sent Britton a letter reminding him of his continuing obligations to Softchoice. (A copy is attached as Exhibit #3). Specifically, Softchoice reminded Britton that he was required to abide by the agreed-to confidentiality and non-solicitation terms.

36.     Softchoice also sent SHI a copy of the letter to ensure it was aware of its

obligations and those of Britton.

## FIEDLER'S EMPLOYMENT WITH SOFTCHOICE

37.     On March 13, 2006, Softchoice hired Fiedler for the position of Corporate

Account Executive in its Dallas, Texas office.

38.     On March 1, 2006, Fiedler signed an Offer of Employment letter ("Offer Letter")

wherein he agreed, *inter alia*, as follows:

> Confidentiality: You acknowledge that by, accepting this position, . . .
> information you acquire during your employment with Softchoice Corporation
> is considered confidential and proprietary and cannot be utilized for any other
> purposes other than conducting business on behalf of Softchoice and you
> agree not to violate any obligation with respect to such information, whether
> during your employment with Softchoice or thereafter.  (A copy is attached as
> Exhibit #4).

39.     In consideration for agreeing to the terms of the Offer Letter, Softchoice

implicitly or expressly promised to, and in fact subsequently did, provide Fiedler with

employment at Softchoice, access to confidential, proprietary or trade secret information

concerning Softchoice's business, and access to and the opportunity to develop relationships

with Softchoice's customers.

40.     Fiedler would not have been allowed to assume employment with Softchoice or

been provided with access to Softchoice's confidential information and customers if he had not

signed the Offer Letter.

41.     On October 8, 2007, Fiedler signed a separate Confidentiality and

Non-Solicitation Agreement (the "Agreement") wherein he agreed not to solicit Softchoice

customers with whom he had done business during his tenure with Softchoice for twelve months

following the termination of his employment, and not to recruit any Softchoice employee

throughout the same period.  (A copy is attached as Exhibit #5).

42.     Specifically, the Agreement stated that Fiedler could not:

(1) Directly or indirectly solicit, entice or induce any customer, potential
customer vendor referral source whom you solicited or did business with on
behalf of the Company, or with whom you otherwise became acquainted as a
result of your employment with the Company, to become a customer, of any
other person, firm or corporation with respect to products and/or services then
sold or under development by the Company or competitive with products
and/or services then sold or under development by the Company, or to cease
doing business with the Company and (2) Directly or indirectly solicit or
recruit (or attempt to solicit or recruit) any employee of the Company . . . to
terminate such person's employment with the Company, work for a third-
party other than the Company, work in self-employment or as an independent
contractor, or engage in any activity that would cause any such employee to
violate any agreement with the Company, except as required to perform your
job duties for the Company.

43.     In the Agreement, Fiedler also promised to maintain the secrecy of Softchoice's

confidential, proprietary and trade secret information and not to use that information for any

purpose other than in his capacity as a Softchoice employee.  Fiedler expressly agreed that such

information includes, but is not limited to:

(i) all client/customer lists and all lists or other compilations containing client,
customer or vendor information; (ii) information concerning customer
preferences, needs, requirements, business plans, etc.; (iii) information
concerning potential customer preferences, needs, requirements, business
plans, etc.; . . . (vi) sales plans, strategies, tools, competitive advantages and
disadvantages, promotional strategies, discounts, pricing, incentives and the
like . . . .

44.     Further, Fiedler explicitly acknowledged in the Agreement that Softchoice had

incurred great expense gathering this confidential, proprietary or trade secret information and

that it was of great value to Softchoice's business.

45.     In consideration for the Agreement, Softchoice implicitly or expressly agreed to,

and in fact, subsequently did, provide Fiedler with continued employment at Softchoice, access

to confidential, proprietary or trade secret information concerning Softchoice's business, and access to and the opportunity to develop relationships with Softchoice's customers.

46.     Fiedler would not have been allowed to continue employment with Softchoice or been provided with continued access to Softchoice's confidential information and customers if he had not signed the Agreement.

47.     Fiedler voluntarily resigned from his employment with Softchoice, without prior notice, effective February 2, 2010.

48.     On information and belief, Fiedler had already accepted a position as Account Executive with Softchoice's direct competitor, SHI, before he resigned from Softchoice.

49.     On March 9, 2010, Softchoice sent Fiedler a letter reminding him of his continuing obligations to Softchoice. (A copy is attached as Exhibit #6). Specifically, Softchoice reminded Fiedler that he was required to abide by the agreed-to confidentiality and non-solicitation terms.

50.     Softchoice also sent SHI a copy of the letter to ensure it was aware of its obligations and those of Fiedler.

## FRUEHAN'S EMPLOYMENT WITH SOFTCHOICE

51.     On January 6, 2006, Softchoice hired Fruehan for the position of Outbound Sales Representative in its Houston, Texas office.

52.     On December 29, 2005, Fruehan signed an Offer of Employment letter ("Offer Letter") wherein he agreed, *inter alia*, as follows:

> Confidentiality: You acknowledge that by, accepting this position, . . .
> information you acquire during your employment with Softchoice Corporation
> is considered confidential and proprietary and cannot be utilized for any other
> purposes other than conducting business on behalf of Softchoice and you
> agree not to violate any obligation with respect to such information, whether

during your employment with Softchoice or thereafter. (A copy is attached as Exhibit #7).

53.     In consideration for agreeing to the terms of the Offer Letter, Softchoice implicitly or expressly agreed to, and in fact subsequently did, provide Fruehan with employment at Softchoice, access to confidential, proprietary or trade secret information concerning Softchoice's business, access to and the opportunity to develop relationships with Softchoice's customers.

54.     Fruehan would not have been allowed to assume employment with Softchoice or been provided with continued access to Softchoice's confidential information and customers if he had not signed the Offer Letter.

55.     On October 4, 2007, Fruehan signed a separate Confidentiality and Non-Solicitation Agreement (the "Agreement") wherein he agreed not to solicit Softchoice customers with whom he had done business during his tenure with Softchoice for twelve months following the termination of his employment, and not to recruit any Softchoice employee throughout the same period. (A copy is attached as Exhibit #8).

56.     Specifically, the Agreement stated that Fruehan could not:

(1) Directly or indirectly solicit, entice or induce any customer, potential customer vendor referral source whom you solicited or did business with on behalf of the Company, or with whom you otherwise became acquainted as a result of your employment with the Company, to become a customer, of any other person, firm or corporation with respect to products and/or services then sold or under development by the Company or competitive with products and/or services then sold or under development by the Company, or to cease doing business with the Company and (2) Directly or indirectly solicit or recruit (or attempt to solicit or recruit) any employee of the Company . . . to terminate such person's employment with the Company, work for a third-party other than the Company, work in self-employment or as an independent contractor, or engage in any activity that would cause any such employee to violate any agreement with the Company, except as required to perform your job duties for the Company . . ..

57.     In the Agreement, Fruehan also promised to maintain the secrecy of Softchoice's confidential, proprietary and trade secret information and not to use that information for any purpose other than in his capacity as a Softchoice employee.  Fruehan expressly agreed that such information includes, but is not limited to:

> (i) all client/customer lists and all lists or other compilations containing client, customer or vendor information; (ii) information concerning customer preferences, needs, requirements, business plans, etc.; (iii) information concerning potential customer preferences, needs, requirements, business plans, etc.; . . . (vi) sales plans, strategies, tools, competitive advantages and disadvantages, promotional strategies, discounts, pricing, incentives and the like . . . .

58.     Further, Fruehan explicitly acknowledged in the Agreement that Softchoice had incurred great expense gathering this confidential, proprietary or trade secret information and that it was of great value to Softchoice's business.

59.     In consideration for the Agreement, Softchoice implicitly or expressly agreed to, and in fact subsequently did, provide Fruehan with continued employment at Softchoice, access to confidential, proprietary or trade secret information concerning Softchoice's business, and access to and the opportunity to develop relationships with Softchoice's customers.

60.     Fruehan would not have been allowed to continue employment with Softchoice or been provided with continued access to Softchoice's confidential information and customers if he had not signed the Agreement.

61.     Fruehan voluntarily resigned from his employment with Softchoice, without prior notice, effective December 7, 2009.

62.     On information and belief, Fruehan had already accepted a position as Account Executive with Softchoice's direct competitor, SHI, before he resigned from Softchoice.

63.     On February 24, 2010, Softchoice sent Fruehan a letter reminding him of his

continuing obligations to Softchoice. (A copy is attached as Exhibit #9). Specifically,

Softchoice reminded Fruehan that he was required to abide by the agreed-to confidentiality and

non-solicitation terms.

64.     Softchoice also sent SHI a copy of the letter to ensure it was aware of its

obligations and those of Fruehan.

## WILHELM'S EMPLOYMENT WITH SOFTCHOICE

65.     On January 30, 2006, Softchoice hired Wilhelm for the position of Outbound

Sales Representative in its Houston, Texas office.

66.     On January 12, 2006, Wilhelm signed an Offer of Employment letter ("Offer

Letter") wherein he agreed, *inter alia*, as follows:

> Confidentiality: You acknowledge that by, accepting this position, . . .
> information you acquire during your employment with Softchoice Corporation
> is considered confidential and proprietary and cannot be utilized for any other
> purposes other than conducting business on behalf of Softchoice and you
> agree not to violate any obligation with respect to such information, whether
> during your employment with Softchoice or thereafter. (A copy is attached as
> Exhibit #10).

67.     In consideration for agreeing to the terms of the Offer Letter, Softchoice

implicitly or expressly agreed to, and in fact subsequently did, provide Wilhelm with

employment at Softchoice, access to confidential, proprietary or trade secret information

concerning Softchoice's business, and access to and the opportunity to develop relationships

with Softchoice's customers.

68.     Wilhelm would not have been allowed to assume employment with Softchoice or

been provided with continued access to Softchoice's confidential information and customers if

he had not signed the Offer Letter.

69.     On October 2, 2007, Wilhelm signed a separate Confidentiality and
Non-Solicitation Agreement (the "Agreement") wherein he agreed not to solicit Softchoice
customers with whom he had done business during his tenure with Softchoice for twelve months
following the termination of his employment, and not to recruit any Softchoice employee
throughout the same period.  (A copy is attached as Exhibit #11).

70.     Specifically, the Agreement stated that Wilhelm could not:

(1) Directly or indirectly solicit, entice or induce any customer, potential
customer vendor referral source whom you solicited or did business with on
behalf of the Company, or with whom you otherwise became acquainted as a
result of your employment with the Company, to become a customer, of any
other person, firm or corporation with respect to products and/or services then
sold or under development by the Company or competitive with products
and/or services then sold or under development by the Company, or to cease
doing business with the Company and (2) Directly or indirectly solicit or
recruit (or attempt to solicit or recruit) any employee of the Company . . . to
terminate such person's employment with the Company, work for a third-
party other than the Company, work in self-employment or as an independent
contractor, or engage in any activity that would cause any such employee to
violate any agreement with the Company, except as required to perform your
job duties for the Company . . . .

71.     In the Agreement, Wilhelm also promised to maintain the secrecy of Softchoice's
confidential, proprietary and trade secret information and not to use that information for any
purpose other than in his capacity as a Softchoice employee.  Wilhelm expressly agreed that such
information includes, but is not limited to:

(i) all client/customer lists and all lists or other compilations containing client,
customer or vendor information; (ii) information concerning customer
preferences, needs, requirements, business plans, etc.; (iii) information
concerning potential customer preferences, needs, requirements, business
plans, etc.; . . . (vi) sales plans, strategies, tools, competitive advantages and
disadvantages, promotional strategies, discounts, pricing, incentives and the
like . . . .

72.     Further, Wilhelm explicitly acknowledged in the Agreement that Softchoice had incurred great expense gathering this confidential, proprietary or trade secret information and that it was of great value to Softchoice's business.

73.     In consideration for the Agreement, Softchoice implicitly or expressly agreed to, and in fact subsequently did, provide Wilhelm with continued employment at Softchoice, access to confidential, proprietary or trade secret information concerning Softchoice's business, and access to and the opportunity to develop relationships with Softchoice's customers.

74.     Wilhelm would not have been allowed to continue employment with Softchoice or been provided with continued access to Softchoice's confidential information and customers if he had not signed the Agreement.

75.     Wilhelm's employment with Softchoice ended on November 30, 2009.

76.     On information and belief, Wilhelm had already accepted a position as Account Executive with Softchoice's direct competitor, SHI, before he resigned from Softchoice.

77.     On February 24, 2010, Softchoice sent Wilhelm a letter reminding him of his continuing obligations to Softchoice. (A copy is attached as Exhibit #12). Specifically, Softchoice reminded Wilhelm that he was required to abide by the agreed-to confidentiality and non-solicitation terms.

78.     Softchoice also sent SHI a copy of the letter to ensure it was aware of its obligations and those of Wilhelm.

**SHEEHAN'S EMPLOYMENT WITH SOFTCHOICE**

79.     On May 1, 2006, Softchoice hired Sheehan for the position of Outbound Sales Representative in its Austin, Texas office.

80. On April 2, 2006, Sheehan signed an Offer of Employment letter ("Offer Letter")

wherein he agreed, *inter alia*, as follows:

> Confidentiality: You acknowledge that by, accepting this position, . . .
> information you acquire during your employment with Softchoice Corporation
> is considered confidential and proprietary and cannot be utilized for any other
> purposes other than conducting business on behalf of Softchoice and you
> agree not to violate any obligation with respect to such information, whether
> during your employment with Softchoice or thereafter. (A copy is attached as
> Exhibit #13).

81. In consideration for agreeing to the terms of the Offer Letter, Softchoice

implicitly or expressly agreed to, and in fact subsequently did, provide Sheehan with

employment at Softchoice, access to confidential, proprietary or trade secret information

concerning Softchoice's business, and access to and the opportunity to develop relationships

with Softchoice's customers.

82. Sheehan would not have been allowed to assume employment with Softchoice or

been provided with continued access to Softchoice's confidential information and customers if

he had not signed the Offer Letter.

83. On October 10, 2007, Sheehan signed a separate Confidentiality and

Non-Solicitation Agreement (the "Agreement") wherein he agreed not to solicit Softchoice

customers with whom he had done business during his tenure with Softchoice for twelve months

following the termination of his employment, and not to recruit any Softchoice employee

throughout the same period. (A copy is attached as Exhibit #14).

84. Specifically, the Agreement stated that Sheehan could not:

> (1) Directly or indirectly solicit, entice or induce any customer, potential
> customer vendor referral source whom you solicited or did business with on
> behalf of the Company, or with whom you otherwise became acquainted as a
> result of your employment with the Company, to become a customer, of any
> other person, firm or corporation with respect to products and/or services then
> sold or under development by the Company or competitive with products

sf-2890853                                    16

and/or services then sold or under development by the Company, or to cease doing business with the Company and (2) Directly or indirectly solicit or recruit (or attempt to solicit or recruit) any employee of the Company . . . to terminate such person's employment with the Company, work for a third-party other than the Company, work in self-employment or as an independent contractor, or engage in any activity that would cause any such employee to violate any agreement with the Company, except as required to perform your job duties for the Company. . . ..

85.     In the Agreement, Sheehan also promised to maintain the secrecy of Softchoice's confidential, proprietary and trade secret information and not to use that information for any purpose other than in his capacity as a Softchoice employee.  Sheehan expressly agreed that such information includes, but is not limited to:

(i) all client/customer lists and all lists or other compilations containing client, customer or vendor information; (ii) information concerning customer preferences, needs, requirements, business plans, etc.; (iii) information concerning potential customer preferences, needs, requirements, business plans, etc.; . . . (vi) sales plans, strategies, tools, competitive advantages and disadvantages, promotional strategies, discounts, pricing, incentives and the like . . . .

86.     Further, Sheehan explicitly acknowledged in the Agreement that Softchoice had incurred great expense gathering this confidential, proprietary or trade secret information and that it was of great value to Softchoice's business.

87.     In consideration for the Agreement, Softchoice implicitly or expressly agreed to, and in fact subsequently did, provide Sheehan with continued employment at Softchoice, access to confidential, proprietary or trade secret information concerning Softchoice's business, and access to and the opportunity to develop relationships with Softchoice's customers.

88.     Sheehan would not have been allowed to continue employment with Softchoice or been provided with continued access to Softchoice's confidential information and customers if he had not signed the Agreement.

89.     Sheehan voluntarily resigned from his employment with Softchoice, without prior notice, effective April 13, 2009.

90.     On information and belief, Sheehan had already accepted a position as Account Executive with Softchoice's direct competitor, SHI, before he resigned from Softchoice.

91.     On April 16, 2009, Softchoice sent Sheehan a letter reminding him of his continuing obligations to Softchoice. (A copy is attached as Exhibit #15). Specifically, Softchoice reminded Sheehan that he was required to abide by the agreed-to confidentiality and non-solicitation terms.

92.     Softchoice also sent SHI a copy of the letter to ensure it was aware of its obligations and those of Wilhelm.

## FORD'S EMPLOYMENT WITH SOFTCHOICE

93.     On February 15, 2000, Softchoice hired Ford for the position of Corporate Sales Representative in its Dallas, Texas office.  On January 2, 2007, Ford was promoted to District Sales Manager in the Austin, Texas office.

94.     On February 9, 2007, Ford signed a Promotion Letter ("Promotion Letter") wherein he agreed, *inter alia*, as follows:

> Confidentiality:  You acknowledge that by, accepting this position, . . . information you acquire during your employment with Softchoice Corporation is considered confidential and proprietary and cannot be utilized for any other purposes other than conducting business on behalf of Softchoice and you agree not to violate any obligation with respect to such information, whether during your employment with Softchoice or thereafter.  (A copy is attached as Exhibit #16)

95.     In signing the Promotion Letter, Ford also agreed not to solicit Softchoice customers with whom he had done business during his tenure with Softchoice for twelve months

following the termination of his employment, and not to recruit any Softchoice employee

throughout the same period.

96.     Ford further agreed that the provisions regarding the non-solicitation of clients

and employees would apply to him for an additional 12-month period if he were to violate or

breach either provision.

97.     Specifically, the Promotion Letter stated that Ford could not:

(i) Directly or indirectly solicit, entice or induce any client or vendor referral
source whom I solicited or did business with on behalf of the Company, or with
whom I otherwise became acquainted as a result of my employment with the
Company, to become a client, of any other person, firm or corporation with
respect to products and/or services then sold or under development by the
Company or competitive with products and/or service then sold or under
development by the Company, or to cease doing business with the Company, and
I shall not contact or approach any such person, firm or corporation for such
purpose or authorize or knowingly approve the taking of such actions by any
other person; or

(ii) Directly or indirectly solicit or recruit (or attempt to solicit or recruit) any
employee of the Company . . . to terminate such person's employment with the
Company, work for a third party other than the Company, work in self-
employment or as an independent contractor, or engage in any activity that would
cause any such employee to violate any agreement with the Company . . .

98.     In the Promotion Letter, Ford also promised to maintain the secrecy of

Softchoice's confidential, proprietary and trade secret information and not to use that

information for any purpose other than in his capacity as a Softchoice employee.

99.     In consideration for agreeing to the terms of the Promotion Letter, Softchoice

implicitly or expressly agreed to, and in fact subsequently did, promote Ford to District Sales

Manager, provided him with continued access to confidential, proprietary or trade secret

information concerning Softchoice's business, and the opportunity to develop relationships with

Softchoice's customers.

100.    Ford would not have been allowed to continue his employment with Softchoice or been provided with continued access to Softchoice's confidential information and customers if he had not signed the Promotion Letter.

101.    Ford voluntarily resigned from his employment with Softchoice, without prior notice, effective April 1, 2008.

102.    On information and belief, Ford had already accepted a position with Softchoice's direct competitor, SHI, as regional director of the newly formed division headquartered in Austin, before he resigned from Softchoice.

103.    On April 20, 2008, Softchoice sent Ford a letter reminding him of his continuing obligations to Softchoice.  (A copy is attached as Exhibit #17).  Specifically, Softchoice reminded Ford that he was required to abide by the agreed-to confidentiality and non-solicitation terms.

104.    Softchoice also sent SHI a copy of the letter to ensure it was aware of its obligations and those of Ford.

## CLAIMS COMMON TO ALL DEFENDANT EMPLOYEES

105.    While at Softchoice, the customers serviced by Defendant Employees generally were (a) preexisting Softchoice customers that were referred to them for servicing by other Softchoice employees, (b) customers that were developed from leads given to them by other Softchoice employees or partners, and/or (c) referrals from existing Softchoice customers.

106.    During their employment with Softchoice, Defendant Employees were assigned to service a specific, preexisting group of customers and to work with prospective customers that had been carefully identified and cultivated by Softchoice.  In their duties as sales representatives, Defendant Employees were the primary, direct interface between Softchoice and

the customers they serviced and were responsible for negotiating the prices for their customers. They were responsible for providing these customers with ongoing advice that was formulated, developed and implemented through the use of Softchoice's confidential, proprietary, and trade secret information and resources.  Defendant Employees generated hundreds of thousands of dollars in revenue for Softchoice every year by servicing Softchoice's customers.  By virtue of their positions, Defendant Employees were all in a position of trust and confidence with Softchoice.

107.    In order to be able to negotiate prices with and otherwise service its customers, Softchoice provided Defendant Employees with supplier pricing and other information regarding Softchoice's profit margins and pricing strategies.  Softchoice also provided Defendant Employees access to other confidential, proprietary, or trade secret information, including, among other things, the identity of Softchoice's clients, financial information regarding its clients' rates, its contacts for those clients, the buying and pricing negotiation practices and preferences of Softchoice and its clients, the clients' technology needs, Softchoice's assessment of the clients' future needs and plans for meeting those needs.

108.    Defendant Employees were paid by Softchoice to perform these duties.

**POST-TERMINATION CLAIMS COMMON TO ALL DEFENDANT EMPLOYEES**

109.    Now employed by SHI, Defendant Employees have willfully and repeatedly violated the terms of their agreements with Softchoice and their common law duties of confidentiality and loyalty.

110.    Defendant Employees misappropriated confidential, proprietary or trade secret information relating to Softchoice and business.

111.    Defendant Employees are now using their knowledge of Softchoice's confidential, proprietary or trade secret information to initiate contact with Softchoice's customers in order to solicit them.

112.    Upon information and belief, while still working for Softchoice, and/or since joining SHI, Defendant Employees have:

A.    solicited Softchoice clients and prospective clients (information each knew only by virtue of their employment with Softchoice) on behalf or for the benefit of SHI, and in violation of their agreements with Softchoice;

B.    solicited business from Softchoice clients and prospective clients on behalf or for the benefit of SHI in violation of their agreements with Softchoice; and

C.    solicited and recruited Softchoice employees on behalf or for the benefit of SHI in violation of their agreements with Softchoice.

113.    Upon information and belief, Defendant Employees have misused and misappropriated Softchoice's confidential, proprietary, or trade secret information for the purpose of soliciting Softchoice's customers.

114.    Upon information and belief, Defendant Employees' conduct has damaged Softchoice's goodwill with its customers.

115.    Accordingly, Softchoice alleges, upon information and belief, that Defendant Employees prepared to engage in, are engaging in, and plan to continue to engaging in, *inter alia*, the following acts:

A.    retention and/or use of Softchoice confidential, proprietary, or trade secret information contained in confidential Softchoice business records;

B.    soliciting Softchoice's customers to divert business from Softchoice;

and/or

C.    other such acts contrary to the terms, conditions, and provisions of their

agreements with Softchoice and applicable law.

116.    Defendant Employees' conduct was, and is, in furtherance of a scheme to obtain

and to convert to their and SHI's use and gain the records of Softchoice, the property of

Softchoice, the trade secrets of Softchoice, and the goodwill generated, directly and indirectly,

by their association with Softchoice, and to do so by means of, *inter alia*, solicitation of

customers of Softchoice serviced by Defendant Employees and/or whose names became known

to them while in the employ of Softchoice.

117.    Upon information and belief, Defendant Employees have realized earnings,

commissions, and/or profits from using, soliciting and disclosing confidential, proprietary or

trade secret information in violation of their agreements with Softchoice.

118.    Softchoice is informed and believes and, on that basis avers that SHI has

encouraged, approved and assisted Defendant Employees in carrying out these unlawful and

improper actions.

## ALLEGATIONS AGAINST SHI

119.    For nine years, Hal Jagger ("Jagger") worked in sales for Softchoice, where he

eventually ascended to the position of Vice President of Marketing and, among other things, was

responsible for developing partnerships with small and mid-sized organizations.  Jagger is now

employed by SHI, where, upon information and belief, he is the General Manager of Corporate

Sales and is tasked with building SHI's partnerships with small and mid-sized organizations.

120.     Upon information and belief, Thai Lee ("Lee"), CEO and President of SHI, is involved in, knowledgeable about, and directs personally and through others, such as Jagger, the activities of the individual sales representative at issue.  Lee's sworn statements in other matters confirm that she exercises direct control over SHI's sales representatives in local offices around North America, including Texas.

121.     Lee hired Jagger in 2008, and upon information and belief, Jagger and Lee, and other members of SHI management, hatched a plan to focus on small and mid-sized organizations and conspired to copy Softchoice's mid-market business model at SHI and eliminate Softchoice as a viable competitor in that market.

122.     Since 2008, SHI has systematically raided dozens of Softchoice's sales employees in the United States and diverted or interfered with hundreds of Softchoice customer relationships, among other things, by using such electronic networking systems as "Linkedin."

123.     Upon information and belief, Lee and Jagger — in connection with other SHI managers and employees, including Defendant Employees — conspired to and have tortiously interfered with Softchoice's contractual relationships in Texas.

124.     Upon information and belief, Lee, Jagger, and other management-level employees of SHI are fully aware of the unlawful and improper actions being conducted by Defendant Employees.  Further, upon information and belief, Lee, Jagger, and other management-level employees of SHI have directed, encouraged, approved and assisted Defendant Employees in carrying out these unlawful and improper actions.

**PLAINTIFF'S INJURIES**

125.    Defendants' conduct was reckless, malicious and without regard to Softchoice's rights, thereby giving rise to actual and punitive damages for which Defendants are jointly and severally liable.

**COUNT I**
**BREACH OF CONTRACT (CONFIDENTIALITY PROVISION)**
**(AGAINST DEFENDANT EMPLOYEES)**

126.    Softchoice incorporates and realleges paragraphs 1 through 125 of this Complaint as though fully set forth herein.

127.    Defendant Employees are subject to the confidentiality provision of their agreements with Softchoice.

128.    All conditions precedent necessary for the enforcement of these agreements have been satisfied.

129.    By virtue of the foregoing conduct, Defendant Employees have breached the confidentiality terms of their agreements with Softchoice.

130.    Defendant Employees are continuing to violate their contractual obligations.

131.    As a result of their breach, Softchoice has been and will continue to suffer irreparable harm and loss.

**COUNT II**
**BREACH OF CONTRACT (NON-SOLICITATION PROVISION)**
**(AGAINST DEFENDANT EMPLOYEES)**

132.    Softchoice incorporates and realleges paragraphs 1 through 131 of this Complaint as though fully set forth herein.

133.    Defendant Employees are subject to the non-solicitation provision of their agreements with Softchoice.

134.     All conditions precedent necessary for the enforcement of these agreements have been satisfied.

135.     By virtue of the foregoing conduct, Defendant Employees have breached the non-solicitation terms of their agreements with Softchoice.

136.     Defendant Employees are continuing to violate their contractual obligations.

137.     As a result of their breach, Softchoice has been and will continue to suffer irreparable harm and loss.

**COUNT III**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**
**(AGAINST ALL DEFENDANTS)**

138.     Softchoice incorporates and realleges paragraphs 1 through 137 of this Complaint as though fully set forth herein.

139.     Softchoice is or, but for Defendants' wrongful conduct, was a party to valid contractual relationships with its customers.

140.     Through their employment at Softchoice, Defendant Employees knew of Softchoice's contractual relationships with its customers and/or previously had worked with these persons while employed by Softchoice.

141.     Defendant Employees intentionally, maliciously, and without justification or privilege, solicited customers for whom they formerly had responsibility at Softchoice and acted to deprive Softchoice of its existing clients and contractual relationships.

142.     SHI has encouraged, approved and assisted Defendant Employees in carrying out these unlawful and improper actions and has deliberately benefited from them.

143.   Defendants have intentionally, maliciously, and without justification or privilege acted to deprive Softchoice of its contractual relationship with current Softchoice employees by improper means.

144.   The interference by Defendants with Softchoice's business is wrongful and tortious.

145.   As a result of the tortious actions by Defendants, Softchoice has been and will continue to suffer irreparable harm and loss.

## COUNT IV – TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL AND BUSINESS RELATIONS (AGAINST ALL DEFENDANTS)

146.   Softchoice incorporates and realleges paragraphs 1 through 145 of this Complaint as though fully set forth herein.

147.   There is, or was, but for Defendants' wrongful conduct, a reasonable probability that Softchoice would enter into contractual or business relationships with prospective customers.

148.   SHI and Defendant Employees have interfered with Softchoice's prospective customers by causing the customers to discontinue their relationships with Softchoice.

149.   The interference by SHI and Defendant Employees was improper in motive and means.

150.   SHI is fully aware of the unlawful and improper actions being conducted by Defendant Employees.  Further, SHI has encouraged, approved and assisted Defendant Employees in carrying out these unlawful and improper actions.

151.   Defendants acted willfully, maliciously, and with a conscious intent to prevent Softchoice from entering into the prospective contractual or business relationship with potential

customers, or knew that their interference was substantially certain to interfere with Softchoice's prospective contractual or business relationships.

152.     As a result of the tortious actions by Defendants, Softchoice has been and will continue to suffer irreparable harm and loss.

**COUNT V**
**MISAPPROPRIATION OF TRADE SECRETS/CONFIDENTIAL INFORMATION**
**(AGAINST ALL DEFENDANTS)**

153.     Softchoice incorporates and realleges paragraphs 1 through 152 of this Complaint as though fully set forth herein.

154.     Softchoice maintains confidential, proprietary, and trade secret information including data pertaining to Softchoice's customers, software and service objectives and preferences, sales practices, pricing strategies, and marketing mechanisms utilized with particular customers, and other highly confidential personal and financial information.  This information constitutes trade secrets of Softchoice.

155.     This information derives independent economic value by not being commonly known to the public or to competitors such as SHI, who can profit from its use or disclosure. Softchoice has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which is of great independent and economic value to Softchoice and any competitor.

156.     Softchoice has taken adequate measures under the circumstances to maintain the secrecy of this information, including assigning computer access passwords to access Softchoice computer systems and records, restricting access to its business premises, and having employees, including Defendant Employees, sign agreements that expressly prohibit the use and disclosure of such information outside of Softchoice.

157.    Defendant Employees' knowledge of this information was acquired under circumstances giving rise to a duty to maintain the information's secrecy and limit its use.

158.    Upon information and belief, Defendant Employees have in their possession the aforementioned confidential, proprietary, or trade secret information of Softchoice, the disclosure and misappropriation of which poses a significant threat to Softchoice's ongoing business in Texas.

159.    SHI is fully aware of the unlawful and improper actions being conducted by Defendant Employees.  Further, upon information and belief, SHI has encouraged, approved and assisted Defendant Employees in carrying out these unlawful and improper actions.

160.    Defendants' foregoing conduct constitutes misappropriation and misuse of Softchoice's confidential, proprietary, or trade secret information because Defendants have used and/or disclosed Softchoice's customer information without Softchoice's consent.

161.    As a direct and proximate result of the foregoing, Softchoice has suffered and will continue to suffer irreparable harm and loss.

### COUNT VI
### BREACH OF DUTY OF LOYALTY/BREACH OF FIDUCIARY DUTY
### (AGAINST DEFENDANT EMPLOYEES)

162.    Softchoice incorporates and realleges paragraphs 1 through 161 of this Complaint as though fully set forth herein.

163.    Defendant Employees had, and continue to have, a common law duty of loyalty and/or a fiduciary duty arising as a result of their relationship as employees of Softchoice.

164.    Defendant Employees had a confidential relationship with Softchoice.

165.    Defendant Employees' intentional access, removal and misuse of Softchoice's confidential information and computer systems, which SHI encouraged, approved and assisted

in, was designed to interfere with Softchoice's customers and to assist Defendant Employees in their efforts to divert business from Softchoice for their own benefit.

166.    This conduct was in direct violation of their fiduciary duty and duty of loyalty to Softchoice.

167.    Further, Defendant Employees are now using, and continuing to use, for their benefit and that of SHI, the information they gained as a result of their employment with Softchoice, and are doing so for the purpose of soliciting Softchoice customers to transfer their accounts to SHI.

168.    As a consequence of the foregoing, Softchoice has suffered and will continue to suffer irreparable harm and loss.

**COUNT VII**
**TORTIOUS INTERFERENCE WITH CONTRACT**
**(AGAINST SHI)**

169.    Softchoice incorporates and realleges paragraphs 1 through 168 of this Complaint as though fully set forth herein.

170.    Softchoice has valid and enforceable agreements with Defendant Employees. Softchoice also has valid and enforceable agreements with its clients.

171.    SHI has knowledge of these agreements.

172.    Despite its knowledge of the terms of Defendant Employees' post-employment restrictions under these agreements, SHI has intentionally and improperly interfered with and caused the breach of these agreements.

173.    SHI's actions in causing Defendant Employees to breach their agreements was and is not justified or privileged, but is SHI's willful attempt to unlawfully take Softchoice's customers.

174.    Similarly, SHI has knowledge of Softchoice's contracts with its customers and has knowingly interfered with these contracts without justification or privilege.

175.    As a consequence of the foregoing, Softchoice has suffered and will continue to suffer irreparable harm and loss.

### COUNT VIII
### CIVIL CONSPIRACY
### (AGAINST ALL DEFENDANTS)

176.    Softchoice incorporates and realleges paragraphs 1 through 175 of this Complaint as though fully set forth herein.

177.    Softchoice is informed and believes and thereon alleges that Defendants knowingly and willfully conspired and agreed to act in concert with each other to commit the wrongful acts described above, including, but not limited to, the misappropriation of confidential, proprietary, and trade secrets information, and the tortious interference with existing and prospective contractual relationships.

178.    The aforementioned conduct of the Defendants constitutes a civil conspiracy to misappropriate Softchoice's confidential, proprietary, and trade secrets information, to tortiously interfere with Softchoice's existing and prospective contractual relationships, and to allow the Defendants to unfairly compete with Softchoice.

179.    By consciously and deliberately conspiring and taking overt acts in pursuit of a common plan or design to engage in illegal and wrongful conduct, Defendant Employees and SHI are jointly and severally liable for damages resulting from their unlawful conduct and purpose.

180.    As a direct and proximate result of Defendants' conspiracy, Softchoice has suffered damages.

181.    Defendants' conduct was malicious, fraudulent and/or oppressive, and Softchoice is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, by virtue of the foregoing acts and conduct complained of in Counts 1 through 181, Softchoice requests the following relief:

1.    Preliminary and permanent injunctive relief to be determined at a future time on all damages for which Plaintiff has no adequate remedy at law.

2.    A Court Order that Defendants, and anyone acting in concert or participation with Defendants, and any agent, employee, attorney, officer or representative of Defendants or any subsidiaries or affiliates of a Defendant, return to Softchoice any and all records or information containing confidential, proprietary, or trade secret information of Softchoice, whether in original, copied, handwritten or any other form, and purge any such information from their possession, custody, or control.

3.    A trial by jury;

4.    An award to Softchoice for its actual damages incurred in an amount to be determined at trial;

5.    An award to Softchoice of damages that are fair and reasonable from each Defendant, including, but not limited to, punitive, exemplary, or special damages;

6.    An award of attorney fees, costs, and other expenses reasonably incurred in this action;

7.    Such other relief as the Court deems just and proper.

Dated: October 7, 2010

SHANNON, GRACEY, RATLIFF &
MILLER, L.L.P.

By: _____
Patrick Maher
Texas State Bar No. 12836625
Shannon, Gracey, Ratliff & Miller, L.L.P.
777 Main Street, Suite 3800
Fort Worth, TX 76102
Telephone:  817.877.8167
Facsimile:   817.336.3735
pmaher@shannongracey.com

Attorneys for Plaintiff
SOFTCHOICE CORPORATION

Arturo J. Gonzalez (*pro hac vice* pending)
Eric A. Tate (*pro hac vice* pending)
Morrison & Foerster LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522
agonzalez@mofo.com
etate@mofo.com

Attorneys for Plaintiff
SOFTCHOICE CORPORATION

## TABLE OF CONTENTS

**Exhibit**        **Description**

1        Michael Britton Offer of Employment letter dated April 11, 2007

2        Michael Britton Confidentiality and Non-Solicitation Agreement dated October 8, 2007

3        Softchoice letter to Michael Britton dated August 6, 2010

4        Heath Fiedler Offer of Employment letter dated March 1, 2006

5        Heath Fiedler Confidentiality and Non-Solicitation Agreement dated October 8, 2007

6        Softchoice letter to Heath Fiedler dated March 9, 2010

7        Josh Fruehan Offer of Employment letter dated December 29, 2005

8        Josh Fruehan Confidentiality and Non-Solicitation Agreement dated October 4, 2007

9        Softchoice letter to Josh Fruehan dated February 24, 2010

10       Phil Wilhelm Offer of Employment letter dated January 12, 2006

11       Phil Wilhelm Confidentiality and Non-Solicitation Agreement dated October 2, 2007

12       Softchoice letter to Phil Wilhelm dated February 24, 2010

13       Ryan Sheehan Offer of Employment letter dated April 2, 2006

14       Ryan Sheehan Confidentiality and Non-Solicitation Agreement dated October 10, 2007

15       Softchoice letter to Ryan Sheehan dated April 16, 2009

16       Ryan Ford Promotion Letter dated February 9, 2007

17       Softchoice letter to Ryan Ford dated April 20, 2008





April 10, 2007

Michael Britton
1710 Damian Way
Richardson, Texas
75081

Re: Offer of Employment

Dear Michael:

It is our pleasure to provide you with this offer of employment with Softchoice Corporation (hereinafter referred to as the "Company").  The position we are offering is that of an Outbound Sales Representative at a base salary of $38,000 per year, payable semi-monthly.  This position reports to the Branch Manager, commencing on April 24, 2007.  Your working hours will be in accordance with the department's schedule from Monday to Friday.  The Company shall review your performance on a semi-annual and annual basis.  This offer is contingent upon favorable references, including confirmation of information stated on the employment application.

**Terms and Conditions:**

**Compensation:**

Commissions are calculated on a monthly basis according to the standard Softchoice Compensation Plan.

**Recoverable Draw:**

If hired prior to the 15th of the month, there will be a non-recoverable draw of $1,000 paid on the next commission run, less applicable deductions required by law, per month, for the first "3" months of your employment with Softchoice.  If hired after the 15th of the month, this draw will not be paid until the second commission pay run from the date of when you started.  To be eligible for this draw, you must be employed for at least a full two-week (10 business days) period.  In addition, if commissions earned during the 3-month draw period are greater than the draw, you will be paid only the commissions and NOT the draw.

**Benefits:**

The health benefit plan offered at Softchoice is medical, dental, vision, life insurance, and accidental death & dismemberment insurance and is available upon date of hire.  Eligibility for the mandatory short term disability insurance begins after six (6) months of continuous employment with the Company and eligibility for participation in the mandatory long term disability insurance begins after three (3) months of continuous employment with the Company.  To be covered by these insurance policies requires completion of the necessary enrollment paperwork.

**Important Benefit Requirement**

United Health Care, our medical insurance carrier, now requires a copy of the HIPAA Certificate of Credible Coverage so that claims are not denied as a result of a pre-existing condition or held up by an inquiry by United Health Care to determine if the claim was pre-existing.  This can be

1



obtained from your previous health insurance carrier for medical coverage.

There is a 401(k) Plan offered with a company match. Eligibility begins after ninety (90) days of continuous employment with the Company.

**Expenses:**

You shall be reimbursed for all authorized traveling and other out-of-pocket expenses actually and properly incurred by you in connection with your duties hereunder. For all such expenses, you shall furnish to the Company original receipts only and shall comply with all Company expense policies.

**Vacation:**

You shall receive up to 10 days vacation per year, to be accrued on a monthly basis. Such vacation shall be taken at a time or times acceptable to the Company having regard to its operations and business.

**Meetings:**

This position may require that you attend department and/or Company meetings that may occur beyond regular business hours, including weekends and may require international business travel. Accordingly, you must obtain a passport and/or other documentation necessary for you to legally travel on an international basis. Any expenses associated with applying for and securing a passport will be your sole responsibility.

**Employee Handbook:**

We will provide you with an Employee Handbook, which describes policies and practices applicable to all employees. It is required that you review this Handbook and comply with all of the directives therein. Failure to comply will be construed as a violation of this agreement and therefore may result in this employment Agreement being terminated.

**Termination of Employment:**

Employment with Softchoice is "at will," meaning that either Softchoice or you may terminate your employment at any time for any reason whatsoever or for no reason, with or without notice.

**Confidentiality:**

You acknowledge that by, accepting this position, you will not violate the term of any agreement applicable to you, and that you will not utilize or make available to us any confidential or proprietary information of any third party or violate any obligation with respect to such information.

You understand that, during the course of your work, you will have access to Proprietary Information (as defined below) concerning the Company and its customers and prospective customers. You understand that the Company has developed, compiled, and otherwise obtained, often at great expense, this information, which has great value to the Company's business. You agree to hold in strict confidence all Proprietary Information and will not disclose any Proprietary Information to anyone outside of the Company. You agree that you will not use, disclose, copy, publish, summarize, or remove from Company premises Proprietary

2



Information, except during your employment to the extent necessary to carry out your responsibilities as an employee of the Company

You understand that the term "Proprietary Information" means all information and any idea in whatever form, tangible or intangible, whether disclosed to or learned or developed by you during your employment concerning the Company's business or the business of its customers and/or potential customers unless (i) the information is or becomes publicly known through lawful means; (ii) the information was rightfully in you possession or part of my general knowledge prior to your employment by the Company; or (iii) the information is disclosed to you without confidential or proprietary restriction by a third party who rightfully possesses the Information (without confidential or proprietary restriction) and who did not learn of it directly from the Company. You understand that the Company considers the following information to be included in the definition of Proprietary Information: (i) all client/customer lists and all lists or other compilations containing client, customer or vendor information; (ii) information concerning customer preferences, needs, requirements, business plans, etc.; (iii) information concerning potential customer preferences, needs, requirements, business plans, etc.; (iv) information about products, proposed products, research, product development, techniques, processes, costs, profits, markets, marketing plans, strategies, forecasts, sales and commissions; (iii) plans for the future development and new product concepts; (iv) sales plans, strategies, tools, competitive advantages and disadvantages, promotional strategies, discounts, pricing, incentives and the like; (v) the compensation and terms of employment of other employees; (vi) all other information that has been or will be given to me in confidence by the Company (or any affiliate of it that might be formed);   Proprietary Information also includes any information described above which the Company obtains from another party and which the Company treats as proprietary or designates as Proprietary Information

**Non Solicitation of Customer and Employees:**

You understand that as a sales representative, Softchoice will entrust you with trade secret information regarding its customers, potential customers, sales methods, products, product advantages and/or disadvantages in comparison to competitive products, customer and potential customer preferences and requirements, and the like ("Trade Secret Information"). By accepting employment, you accept this trust and confidence   You acknowledge that solicitation of SoftChoice customers or potential customers about whom you learn Trade Secret Information would involve the use of such Trade Secret Information.   Consequently, you agree that you will not, during your employment at the Company and for a period of twelve (12) months immediately following the termination of your relationship with the Company for any reason (whether voluntarily or involuntarily), either directly or indirectly, on your own behalf or in the service or on behalf of others:

Directly or indirectly solicit, entice or induce any customer, potential customer or vendor referral source whom you solicited or did business with on behalf of the Company, or with whom you otherwise became acquainted as a result of my employment with the Company, to become a customer, of any other person, firm or corporation with respect to products

3



and/or services then sold or under development by the Company or competitive with products and/or services then sold or under development by the Company, or to cease doing business with the Company, and you shall not contact or approach any such person, firm or corporation for such purpose or authorize or knowingly approve the taking of such actions by any other person.

Directly or indirectly solicit or recruit (or attempt to solicit or recruit) any employee of the Company (whether or not such person is a full-time employee or whether or not such employment is pursuant to a written agreement or at-will) to terminate such person's employment with the Company, work for a third-party other than the Company work in self-employment or as an independent contractor, or engage in any activity that would cause any such employee to violate any agreement with the Company, except as required to perform your job duties for the Company.

Please carefully review and consider the terms of the letter and, if you do desire, obtain independent advice with respect to it. Please sign the enclosed copy and return it within three (3) business days so as to signify your acceptance of the terms of your employment with the Company. If we do not receive a signed offer within the stated time frame this offer becomes null and void.

On a more personal note, I would like to thank you for the time you have committed to the selection process. We are confident you will be able to make a significant contribution to the success of our organization and look forward to working with you.

Sincerely,


Ryan Ford
Softchoice Corporation


I confirm that I have read, understood, and am voluntarily agreeing and accepting the terms of my employment as set out in this correspondence. In addition, I have also read and will comply with the terms of the attached Code of Conduct. I also acknowledge that I have had an opportunity to seek independent advice with respect to this matter and that this offer is accepted and agreed to this 11th day of   April  , 2007.


April 11, 2007
Date signed

Michael Britton

4



Oct 08 07 10:39a          SOFTCHOICE CORPORATION

*MICHAEL BRITTON*



**softchoice**

To:        All US Outbound Sales Employees
Date:      October 1, 2007

We would like to take this opportunity to reiterate and clarify the expectations Softchoice Corporation (""Softchoice" or "the Company") has in place for you as a sales representative. This letter serves to remind you of, and confirm your obligations.

**Duties and Obligations**

You agree that to the best of your ability and experience, and in good faith, you will at all times loyally and conscientiously perform all of the duties and obligations required of and from you as a sales representative of Softchoice.

During the term of your employment, you will not engage in any employment, business, or activity that is in any way competitive with the business or proposed business of Softchoice, and you will not assist any other person or organization in competing with Softchoice or in preparing to engage in competition with the business or proposed business of Softchoice.

**Confidentiality:**

You understand that, during the course of your work, you have had and will continue to have access to Proprietary Information (as defined below) concerning the Company and its customers and prospective customers. You understand that the Company has developed, compiled, and otherwise obtained, often at great expense, this information, which has great value to the Company's business. You agree both during your employment and thereafter to hold in strict confidence all Proprietary Information and will not disclose any Proprietary Information to anyone outside of the Company. You further agree that you will not use, disclose copy, publish, summarize, or remove from Company premises Proprietary Information, except during your employment to the extent necessary to carry out your responsibilities as an employee of the Company.

Proprietary Information means any proprietary or confidential information or trade secrets, including, without limitation, research, product or business plans, proposals, client lists and client information, prospect lists, marketing information, software, developments, inventions, processes, formulas, technology, sales methods and systems, sales and profit figures, finances and other business information disclosed by the Company, or its clients or agents, either directly or indirectly in writing, orally or by drawings or inspection of documents or other tangible property. Proprietary Information does not include any information that has become publicly known and made generally available to the public through no wrongful act by you or another person. [Again, to specifically remind you of your obligations as a sales representative, the Company considers the following information to be included in the definition of Proprietary Information: (i) all client/customer lists and all lists or other compilations containing client, customer or vendor information; (ii) information concerning customer preferences, needs, requirements, business plans, etc.; (iii) information concerning potential customer preferences, needs, requirements, business plans, etc.; (iv) information about products, proposed products, research, product development, techniques, processes, costs, profits, markets, marketing plans, strategies, forecasts, sales and commissions; (v) plans for the future development and new product concepts; (vi) sales plans, strategies, tools, competitive advantages and disadvantages, promotional strategies, discounts, pricing, incentives and the like; (vii) the compensation, skills and terms of employment of other employees; (viii) all other information that has been or will be given to you in confidence by the Company (or any affiliate of it that might be formed).] Proprietary Information also includes any information described above which the Company obtains from another party and which the Company treats as proprietary or designates as Proprietary Information.

1



**Non Solicitation of Customers and Employees:**

You understand that as a sales representative, Softchoice trains you and entrusts in you Proprietary Information regarding its customers, potential customers, sales methods, products, product advantages and/or disadvantages in comparison to competitive products, customer and potential customer preferences and requirements, and the like. By confirming this with your signature, you affirm that you have accepted this trust and confidence. You acknowledge that solicitation of Softchoice employees and customers/potential customers with whom you solicited or did business with on behalf of the Company would involve the use of such Proprietary Information. Consequently, you agree that you will not, during your employment at the Company and for a period of twelve (12) months immediately following the termination of your relationship with the Company for any reason (whether voluntarily or involuntarily), either directly or indirectly, on your own behalf or in the service or on behalf of others:

(1) Directly or indirectly solicit, entice or induce any customer, potential customer or vendor referral source whom you solicited or did business with on behalf of the Company, or with whom you otherwise became acquainted as a result of your employment with the Company, to become a customer, of any other person, firm or corporation with respect to products and/or services then sold or under development by the Company or competitive with products and/or services then sold or under development by the Company, or to cease doing business with the Company and (2) Directly or indirectly solicit or recruit (or attempt to solicit or recruit) any employee of the Company (whether or not such person is a full-time employee or whether or not such employment is pursuant to a written agreement or at-will) to terminate such person's employment with the Company, work for a third-party other than the Company, work in self-employment or as an independent contractor, or engage in any activity that would cause any such employee to violate any agreement with the Company, except as required to perform your job duties for the Company.

You understand and agree that the obligations imposed are reasonably required for the protection of the Company and the goodwill associated with the business of the Company. If any obligation is for any reason held to be excessively broad as to scope, activity or subject so as to be unenforceable at law, such provision or provisions will be construed to be enforceable only to the maximum extent compatible with the applicable law.

Again, please carefully review and consider the terms of the letter. Please sign the enclosed copy and return it within three (3) business days so as to confirm your acceptance of the terms of your employment with the Company.

Sincerely,

Nick Foster
VP of People and Growth
Softchoice Corporation

I confirm that I have read, understood, and am voluntarily confirming and accepting the terms of my employment as set out in this correspondence

_____    10-8-2007
Signature                   Date signed

Michael Britton           Dallas
Print Name                Branch or Location

2





August 6, 2010

**VIA COURIER**

Michael Britton
1710 Damian Way
Richardson TX 75081

Re:      **Continuing Obligations to Softchoice Corporation**

Dear Mr. Britton:

We understand that you have accepted employment with Softchoice's competitor, SHI International, Corp. ("SHI"). We are sending you this letter to remind you of important continuing legal obligations that you have with respect to Softchoice.

As you are aware, you entered into a Confidentiality and Non-Solicitation Agreement (the "Agreement"), dated October 1st, 2007, a copy of which is attached hereto. In that Agreement you agreed to:

> Hold in strict confidence all Proprietary Information and not to disclosure and Proprietary Information to anyone outside of the Company. You agree that you will not use, disclose, copy, publish, summarize, or remove from Company premise Proprietary information, except during your employment to the extent necessary to carry out your responsibilities as an employee of the Company.

Further, you agreed that for a period of twelve (12) months following the termination of your employment at Softchoice you would not:

> Directly or indirectly solicit, entice or induce any customer, potential customer or vendor referral source whom you solicited or did business with on behalf of the Company, or with whom you otherwise became acquainted as a result of [your] employment with the Company, to become a customer, of any other person, firm or corporation with respect to products and/or services then sold or under development by the Company or competitive with products and/or services then sold or under development by the Company, or to cease doing business with the Company, and you shall not contact or approach any such person, firm or corporation for such purpose or authorize or knowingly approve the taking of such actions by any other person.

Moreover, you agreed for the same twelve (12) month period not to:



> Directly or indirectly solicit or recruit (or attempt to solicit or recruit) any employee of the Company (whether or not such person is a full-time employee or whether or not such employment is pursuant to a written agreement or at-will) to terminate such person's employment with the Company, work for a third-party other than the Company, work in self-employment or as an independent contractor, or engage in any activity that would cause any such employee to violate any agreement with the Company, except as required to perform your job duties for the Company.

Please note that your contractual obligations expressly prohibit you from directly or indirectly soliciting your former Softchoice customers and Softchoice employees.  Thus, actions such as referring any of your former Softchoice customers to other employees of SHI are prohibited by the Agreement.  Likewise, providing anyone at SHI with the contact information of your former Softchoice customers would be a violation of your obligations. Similarly, providing anyone at SHI with confidential information relating to Softchoice employees, including information about their salaries or performance, is expressly prohibited.  This is by no means an exhaustive list of actions prohibited by the Agreement, but is meant to give you some examples of prohibited actions.

Softchoice takes your continued obligations to it extremely seriously, and expects that you will as well.  Please note that Softchoice will take any and all necessary steps to enforce your contractual obligations, including but not limited to filing legal action against you seeking damages and/or to enjoin violations.   We expressly reserve all of Softchoice's rights, including its right to pursue breach of contract, or any other claims against you or SHI in connection with any prohibited activities, through your employment at SHI, or otherwise.

We have provided a copy of this letter to SHI so that it is aware of your continuing obligations to Softchoice.

Should you have any questions, or if you wish to discuss this matter, please contact me.

Sincerely yours,

*Maria Odoardi*

Maria Odoardi
VP, People
Softchoice Corporation


cc.        *SHI – Human Resources*
          *33 Knightsbridge Road*
          *Piscataway, N.J. 08854-3925*
          *Fax: 732-764-8889*


Attachment.





March 1, 2006

Heath Fiedler
7825 McCallum Blvd
Dallas, TX 75252

**Re:  Offer of Employment**

Dear Heath:

It is our pleasure to provide you with this offer of employment with Softchoice Corporation (hereinafter referred to as the "Company"). The position we are offering is that of a Corporate Account Executive at a base salary of $35,000 per year, payable semi-monthly. This position reports to the Branch Manager, commencing on March 13th, 2006. Your working hours will be in accordance with the department's schedule from Monday to Friday. The Company shall review your performance on a semi-annual and annual basis. We will provide you with an Employee Handbook, which describes policies and practices applicable to all employees.

**Terms and Conditions:**

**Compensation:**

Commissions are calculated on a monthly basis according to the standard Softchoice Compensation Plan. This offer is contingent upon favorable references, including confirmation of information stated on the employment application. **In addition there will be a non-recoverable draw of $1,000 per month, for the first 3 months. If your gross commissions during the first 3 months of your agreement were to be below the draw amount, the difference will be added to your gross commissions for that month.  But, if you were to earn more gross commissions than the draw amount in any given month of the 3 months agreed upon, no draw will be paid during that month.**

**Benefits:**

The health benefit plan offered at Softchoice is medical, dental, vision, life insurance, and accidental death & dismemberment insurance and is available upon date of hire. Eligibility for the mandatory short term disability insurance begins after six (6) months of continuous employment with the Company and eligibility for participation in the mandatory long term disability insurance begins after three (3) months of continuous employment with the Company. To be covered by these insurance policies requires completion of the necessary enrollment paperwork.

1



**Important Benefit Requirement**

United Health Care, our medical insurance carrier, now requires a copy of the HIPAA Certificate of Credible Coverage so that claims are not denied as a result of a pre-existing condition or held up by an inquiry by United Health Care to determine if the claim was pre-existing. This can be obtained from your previous health insurance carrier for medical coverage.

There is a 401(k) Plan offered with a company match. Eligibility begins after ninety (90) days of continuous employment with the Company.

**Expenses:**

You shall be reimbursed for all authorized traveling and other out-of-pocket expenses actually and properly incurred by you in connection with your duties hereunder. For all such expenses, you shall furnish to the Company original receipts only and shall comply with all Company expense policies.

**Vacation:**

You shall receive up to 10 days vacation per year, to be accrued on a monthly basis. Such vacation shall be taken at a time or times acceptable to the Company having regard to its operations and business.

**Meetings:**

This position may require that you attend all department and/or company meetings that may occur beyond regular business hours, including weekends.

**Termination of Employment:**

Employment with Softchoice is "at will," meaning that either Softchoice or you may terminate your employment at any time for any reason whatsoever or for no reason, with or without notice.

**Confidentiality:**

You acknowledge that by, accepting this position, you will not violate the term of any agreement applicable to you, and that you will not utilize or make available to us any confidential or proprietary information of any third party or violate any obligation with respect to such information. In addition, information you acquire during your employment with Softchoice Corporation is considered confidential and proprietary and cannot be utilized for any other purposes other than conducting business on behalf of Softchoice and you agree not to violate any obligation with respect to such information, whether during your employment with Softchoice or thereafter.

2



# softchoice

Please carefully review and consider the terms of the letter and, if you so desire, obtain independent advice with respect to it. Please sign the enclosed copy and return it within three (3) business days so as to signify your acceptance of the terms of your employment with the Company. If we do not receive a signed offer within the stated time frame this offer becomes null and void.

On a more personal note, I would like to thank you for the time you have committed to the selection process. We are confident you will be able to make a significant contribution to the success of our organization and look forward to working with you.

Sincerely,


Jonathan Leaf
Branch Manager
Softchoice Corporation

I confirm that I have read, understood, and am voluntarily agreeing and accepting the terms of my employment as set out in this correspondence. I also acknowledge that I have had an opportunity to seek independent advice with respect to this matter and that this offer is accepted and agreed to this *1st* day of *MARCH*, 2006.


_3.1-06_
Date signed

Heath Fiedler

3



*HEATH FIEDLER*



# softchoice

To:       All US Outbound Sales Employees
Date:     October 1, 2007

We would like to take this opportunity to reiterate and clarify the expectations Softchoice Corporation ("Softchoice" or "the Company") has in place for you as a sales representative. This letter serves to remind you of, and confirm your obligations.

**Duties and Obligations**

You agree that to the best of your ability and experience, and in good faith, you will at all times loyally and conscientiously perform all of the duties and obligations required of and from you as a sales representative of Softchoice.

During the term of your employment, you will not engage in any employment, business, or activity that is in any way competitive with the business or proposed business of Softchoice, and you will not assist any other person or organization in competing with Softchoice or in preparing to engage in competition with the business or proposed business of Softchoice.

**Confidentiality:**

You understand that, during the course of your work, you have had and will continue to have access to Proprietary Information (as defined below) concerning the Company and its customers and prospective customers. You understand that the Company has developed, compiled, and otherwise obtained, often at great expense, this information, which has great value to the Company's business. You agree both during your employment and thereafter to hold in strict confidence all Proprietary Information and will not disclose any Proprietary Information to anyone outside of the Company. You further agree that you will not use, disclose copy, publish, summarize, or remove from Company premises Proprietary Information, except during your employment to the extent necessary to carry out your responsibilities as an employee of the Company.

Proprietary Information means any proprietary or confidential information or trade secrets, including, without limitation, research, product or business plans, proposals, client lists and client information, prospect lists, marketing information, software, developments, inventions, processes, formulas, technology, sales methods and systems, sales and profit figures, finances and other business information disclosed by the Company, or its clients or agents, either directly or indirectly in writing, orally or by drawings or inspection of documents or other tangible property. Proprietary Information does not include any information that has become publicly known and made generally available to the public through no wrongful act by you or another person. [Again, to specifically remind you of your obligations as a sales representative, the Company considers the following information to be included in the definition of Proprietary Information: (i) all client/customer lists and all lists or other compilations containing client, customer or vendor information; (ii) information concerning customer preferences, needs, requirements, business plans, etc.; (iii) information concerning potential customer preferences, needs, requirements, business plans, etc.; (iv) information about products, proposed products, research, product development, techniques, processes, costs, profits, markets, marketing plans, strategies, forecasts, sales and commissions; (v) plans for the future development and new product concepts; (vi) sales plans, strategies, tools, competitive advantages and disadvantages, promotional strategies, discounts, pricing, incentives and the like; (vii) the compensation, skills and terms of employment of other employees; (viii) all other information that has been or will be given to you in confidence by the Company (or any affiliate of it that might be formed).] Proprietary Information also includes any information described above which the Company obtains from another party and which the Company treats as proprietary or designates as Proprietary Information.

1



**Non Solicitation of Customers and Employees:**

You understand that as a sales representative, Softchoice trains you and entrusts in you Proprietary Information regarding its customers, potential customers, products, product advantages and/or disadvantages in comparison to competitive products, customer and potential customer preferences and requirements, and the like.  By confirming this with your signature, you affirm that you have accepted this trust and confidence.  You acknowledge that solicitation of Softchoice employees and customers/potential customers with whom you solicited or did business with on behalf of the Company would involve the use of such Proprietary Information. Consequently, you agree that you will not, during your employment at the Company and for a period of twelve (12) months immediately following the termination of your relationship with the Company for any reason (whether voluntarily or involuntarily), either directly or indirectly, on your own behalf or in the service or on behalf of others:

(1) Directly or indirectly solicit, entice or induce any customer, potential customer or vendor referral source whom you solicited or did business with on behalf of the Company, or with whom you otherwise became acquainted as a result of your employment with the Company, to become a customer, of any other person, firm or corporation with respect to products and/or services then sold or under development by the Company or competitive with products and/or services then sold or under development by the Company, or to cease doing business with the Company and  (2) Directly or indirectly solicit or recruit (or attempt to solicit or recruit) any employee of the Company (whether or not such person is a full-time employee or whether or not such employment is pursuant to a written agreement or at-will) to terminate such person's employment with the Company, work for a third-party other than the Company, work in self-employment or as an independent contractor, or engage in any activity that would cause any such employee to violate any agreement with the Company, except as required to perform your job duties for the Company.

You understand and agree that the obligations imposed are reasonably required for the protection of the Company and the goodwill associated with the business of the Company.  If any obligation is for any reason held to be excessively broad as to scope, activity or subject so as to be unenforceable at law, such provision or provisions will be construed to be enforceable only to the maximum extent compatible with the applicable law.

Again, please carefully review and consider the terms of the letter.  Please sign the enclosed copy and return it within three (3) business days so as to confirm your acceptance of the terms of your employment with the Company.

Sincerely,

Nick Foster
VP of People and Growth
Softchoice Corporation


I confirm that I have read, understood, and am voluntarily confirming and accepting the terms of my employment as set out in this correspondence

_____        _____
Signature                                Date signed
                                         *10.8.07*

*HEATH FIEDLER*                          *DALLAS*
_____        _____
Print Name                               Branch or Location

2





March 9, 2010

**VIA COURIER**

Heath Fiedler
2529 Royal Troon Drive
Plano TX 75025

**Re: Confidentiality and Non-Solicit Agreement with Softchoice Corporation**

Dear Heath,

We'd like to take this opportunity to remind you that, although your employment with Softchoice has ended, some of your obligations to Softchoice have not.

Without limiting in any way any other obligations that you have to Softchoice, you continue to be bound by the following:

You signed a Confidentiality and Non-Solicitation Agreement, dated October 1, 2007 ("Agreement"). A copy of the Agreement is enclosed with this letter. In this Agreement, you acknowledged that the information you acquired during your employment with Softchoice is confidential and proprietary (some examples of this type of information are: customer lists, Outlook contacts, address lists, sales plans and strategies, and so on). You agreed that such information cannot be used for any other purpose other than conducting business on behalf of Softchoice and you agreed that you would not violate any obligation with respect to such information, both while you were employed at Softchoice **and thereafter.**

Also, by the terms of this Agreement, you agreed, generally speaking, that for a period of **one year** following the termination of your employment, that you would not solicit Softchoice customers when you left to join a new company.

Specifically, you agreed that you would not directly or indirectly solicit, entice or induce any client or vendor referral source whom you solicited or did business with on behalf of Softchoice (or with whom you otherwise became acquainted as a result of your employment with Softchoice) to become a client of any other person firm or corporation with respect to the products and/or services then sold or under development by Softchoice, or to cease doing business with Softchoice and not to contact or approach any such person, firm or corporation for such purpose of authorizing or knowingly approve the taking of such actions by any other person.

**softchoice**

You also agreed, generally speaking, that when you left the employment of Softchoice, you would not solicit existing Softchoice employees or entice them to breach their own agreements.

Specifically, you agreed that you would not directly or indirectly solicit or recruit (or attempt to solicit or recruit) any employee of Softchoice (whether or not such person is a full-time employee or whether or not such employment is pursuant to a written agreement or at will) to terminate such person's employment with Softchoice, work for a third party other than Softchoice, work in self-employment or as an independent contractor, or engage in any activity that would cause any such employee to violate any agreement with Softchoice.

Please note that we will also send a copy of this letter to your new employer so that they are aware of their obligations and can effectively manage any risks your employment may present.

**You should provide a copy of your Agreements to your new employer so that they are aware of their obligations and can effectively manage any risks your employment may present.**

I encourage you to speak with me if you have any questions and to obtain independent legal advice as to the scope of your duties and obligations if you feel that is necessary.

Good luck, and we wish you continued success in your career.

Sincerely,

Maria Odoardi
VP, People
Softchoice Corporation


cc.         *SHI – Human Resources*
            *33 Knightsbridge Road*
            *Piscataway, N.J. 08854-3925*
            *Fax: 732-764-8889*


*Encl.*

*(rev'd May 2008)*





**softchoice**

December 28, 2005

Joshua Fruehan
528 Small Cedar Drive
League City, TX  77573

**Re:  Offer of Employment**

Dear Joshua:

It is our pleasure to provide you with this offer of employment with Softchoice Corporation (hereinafter referred to as the "Company"). The position we are offering is that of an Outbound Sales Representative at a base salary of $ 35,000 per year, payable semi-monthly. This position reports to the Branch Manager, commencing on January 19th, 2006.  You will also attend the corporate launch in Toronto on the weekend of January 6th, 2006.  Arrangements for travel and accommodation will be made separately.

Your working hours will be in accordance with the department's schedule from Monday to Friday. The Company shall review your performance on a semi-annual and annual basis. We will provide you with an Employee Handbook, which describes policies and practices applicable to all employees.

**Terms and Conditions:**

**Compensation:**

> Commissions are calculated on a monthly basis according to the standard Softchoice Compensation Plan. This offer is contingent upon favorable references, including confirmation of information stated on the employment application.  **In addition there will be a non-recoverable draw of $1,000 per month, for the first 3 months.  If your gross commissions during the first 3 months of your agreement were to be below the draw amount, the difference will be added to your gross commissions for that month.   But, if you were to earn more gross commissions than the draw amount in any given month of the 3 months agreed upon, no draw will be paid during that month.**

**Benefits:**

> The health benefit plan offered at Softchoice is medical, dental, vision, life insurance, and accidental death & dismemberment insurance and is available upon date of hire.  Eligibility for the mandatory short term disability insurance begins after six (6) months of continuous employment with the Company and eligibility for participation in the mandatory long term disability insurance begins after three (3) months of continuous employment with the Company. To be covered by these insurance policies requires completion of the necessary enrollment paperwork.

1



**Important Benefit
Requirement**

United Health Care, our medical insurance carrier, now
requires a copy of the HIPAA Certificate of Credible
Coverage so that claims are not denied as a result of a
pre-existing condition or held up by an inquiry by United
Health Care to determine if the claim was pre-existing.
This can be obtained from your previous health insurance
carrier for medical coverage.

There is a 401(k) Plan offered with a company match.  Eligibility
begins after ninety (90) days of continuous employment with
the Company.

**Expenses:**

You shall be reimbursed for all authorized traveling and other
out-of-pocket expenses actually and properly incurred by you in
connection with your duties hereunder.  For all such expenses,
you shall furnish to the Company original receipts only and shall
comply with all Company expense policies.

**Vacation:**

You shall receive up to 10 days vacation per year, to be accrued
on a monthly basis.  Such vacation shall be taken at a time or
times acceptable to the Company having regard to its operations
and business.

**Meetings:**

This position may require that you attend all department and/or
company meetings that may occur beyond regular business
hours, including weekends.

**Termination of Employment:**

Employment with Softchoice is "at will," meaning that either
Softchoice or you may terminate your employment at any time
for any reason whatsoever or for no reason, with or without
notice.

**Confidentiality:**

You acknowledge that by, accepting this position, you will not
violate the term of any agreement applicable to you, and that
you will not utilize or make available to us any confidential or
proprietary information of any third party or violate any
obligation with respect to such information.   In addition,
information you acquire during your employment with Softchoice
Corporation is considered confidential and proprietary and
cannot be utilized for any other purposes other than conducting
business on behalf of Softchoice and you agree not to violate

2



any obligation with respect to such Information, whether during your employment with Softchoice or thereafter.

Please carefully review and consider the terms of the letter and, if you so desire, obtain independent advice with respect to it.  Please sign the enclosed copy and return it within three (3) business days so as to signify your acceptance of the terms of your employment with the Company.  If we do not receive a signed offer within the stated time frame this offer becomes null and void.

On a more personal note, I would like to thank you for the time you have committed to the selection process.  We are confident you will be able to make a significant contribution to the success of our organization and look forward to working with you.

Sincerely,


Rod Morreau
Branch Manager
Softchoice Corporation

I confirm that I have read, understood, and am voluntarily agreeing and accepting the terms of my employment as set out in this correspondence.  I also acknowledge that I have had an opportunity to seek independent advice with respect to this matter and that this offer is accepted and agreed to this 24th day of December, 2005.


12.29. 2005
_____
Date signed

_____
Joshua Fruehan

3





**softchoice**

To:        All US Outbound Sales Employees
Date:      October 1, 2007

We would like to take this opportunity to reiterate and clarify the expectations Softchoice Corporation (""Softchoice" or "the Company") has in place for you as a sales representative. This letter serves to remind you of, and confirm your obligations.

**Duties and Obligations**

You agree that to the best of your ability and experience, and in good faith, you will at all times loyally and conscientiously perform all of the duties and obligations required of and from you as a sales representative of Softchoice.

During the term of your employment, you will not engage in any employment, business, or activity that is in any way competitive with the business or proposed business of Softchoice, and you will not assist any other person or organization in competing with Softchoice or in preparing to engage in competition with the business or proposed business of Softchoice.

**Confidentiality:**

You understand that, during the course of your work, you have had and will continue to have access to Proprietary Information (as defined below) concerning the Company and its customers and prospective customers. You understand that the Company has developed, compiled, and otherwise obtained, often at great expense, this information, which has great value to the Company's business. You agree both during your employment and thereafter to hold in strict confidence all Proprietary Information and will not disclose any Proprietary Information to anyone outside of the Company. You further agree that you will not use, disclose copy, publish, summarize, or remove from Company premises Proprietary Information, except during your employment to the extent necessary to carry out your responsibilities as an employee of the Company.

Proprietary Information means any proprietary or confidential information or trade secrets, including, without limitation, research, product or business plans, proposals, client lists and client information, prospect lists, marketing information, software, developments, inventions, processes, formulas, technology, sales methods and systems, sales and profit figures, finances and other business information disclosed by the Company, or its clients or agents, either directly or indirectly in writing, orally or by drawings or inspection of documents or other tangible property. Proprietary Information does not include any information that has become publicly known and made generally available to the public through no wrongful act by you or another person. [Again, to specifically remind you of your obligations as a sales representative, the Company considers the following information to be included in the definition of Proprietary Information: (i) all client/customer lists and all lists or other compilations containing client, customer or vendor information; (ii) information concerning customer preferences, needs, requirements, business plans, etc.; (iii) information concerning potential customer preferences, needs, requirements, business plans, etc.; (iv) information about products, proposed products, research, product development, techniques, processes, costs, profits, markets, marketing plans, strategies, forecasts, sales and commissions; (v) plans for the future development and new product concepts; (vi) sales plans, strategies, tools, competitive advantages and disadvantages, promotional strategies, discounts, pricing, incentives and the like; (vii) the compensation, skills and terms of employment of other employees; (viii) all other information that has been or will be given to you in confidence by the Company (or any affiliate of it that might be formed).] Proprietary Information also includes any information described above which the Company obtains from another party and which the Company treats as proprietary or designates as Proprietary Information.

1



**Non Solicitation of Customers and Employees:**

You understand that as a sales representative, Softchoice trains you and entrusts in you Proprietary Information regarding its customers, potential customers, sales methods, products, product advantages and/or disadvantages in comparison to competitive products, customer and potential customer preferences and requirements, and the like. By confirming this with your signature, you affirm that you have accepted this trust and confidence. You acknowledge that solicitation of Softchoice employees and customers/potential customers with whom you solicited or did business with on behalf of the Company would involve the use of such Proprietary Information. Consequently, you agree that you will not, during your employment at the Company and for a period of twelve (12) months immediately following the termination of your relationship with the Company for any reason (whether voluntarily or involuntarily), either directly or indirectly, on your own behalf or in the service or on behalf of others:

(1) Directly or indirectly solicit, entice or induce any customer, potential customer or vendor referral source whom you solicited or did business with on behalf of the Company, or with whom you otherwise became acquainted as a result of your employment with the Company, to become a customer, of any other person, firm or corporation with respect to products and/or services then sold or under development by the Company or competitive with products and/or services then sold or under development by the Company, or to cease doing business with the Company and (2) Directly or indirectly solicit or recruit (or attempt to solicit or recruit) any employee of the Company (whether or not such person is a full-time employee or whether or not such employment is pursuant to a written agreement or at-will) to terminate such person's employment with the Company, work for a third-party other than the Company, work in self-employment or as an independent contractor, or engage in any activity that would cause any such employee to violate any agreement with the Company, except as required to perform your job duties for the Company.

You understand and agree that the obligations imposed are reasonably required for the protection of the Company and the goodwill associated with the business of the Company. If any obligation is for any reason held to be excessively broad as to scope, activity or subject so as to be unenforceable at law, such provision or provisions will be construed to be enforceable only to the maximum extent compatible with the applicable law.

Again, please carefully review and consider the terms of the letter. Please sign the enclosed copy and return it within three (3) business days so as to confirm your acceptance of the terms of your employment with the Company.

Sincerely,

Nick Foster
VP of People and Growth
Softchoice Corporation

I confirm that I have read, understood, and am voluntarily confirming and accepting the terms of my employment as set out in this correspondence

Signature                                              Date signed     10 - 4 - 0 7

Print Name      Joshua Freeman                         Branch or Location     Houston

2





February 24, 2010

**VIA COURIER**

Joshua Fruehan
6107 Castle Peak Ln
League City, TX United States
77573-5821

**Re: Confidentiality and Non-Solicit Agreement with Softchoice Corporation**

Dear Joshua,

We'd like to take this opportunity to remind you that, although your employment with Softchoice has ended, some of your obligations to Softchoice have not.

Without limiting in any way any other obligations that you have to Softchoice, you continue to be bound by the following:

When you were hired, you signed an Offer of Employment Agreement, dated December 28th, 2005 ("Employment Agreement"). A copy of the Agreement is enclosed with this letter. In this Employment Agreement, you acknowledged that the information you acquired during your employment with Softchoice is confidential and proprietary (some examples of this type of information are: customer lists, Outlook contacts, address lists, sales plans and strategies, and so on). You agreed that such information cannot be used for any other purpose other than conducting business on behalf of Softchoice and you agreed that you would not violate any obligation with respect to such information, both while you were employed at Softchoice **and thereafter.**

You also signed a Confidentiality and Non-Solicitation Agreement with Softchoice, dated October 1st, 2007 ("Agreement"). A copy of the Agreement is enclosed with this letter. By the terms of this Agreement, you agreed, generally speaking, that for a period of **one year** following the termination of your employment, that you would not solicit Softchoice customers when you left to join a new company.

Specifically, you agreed that you would not directly or indirectly solicit, entice or induce any client or vendor referral source whom you solicited or did business with on behalf of Softchoice (or with whom you otherwise became acquainted as a result of your employment with Softchoice) to become a client of any other person firm or corporation with respect to the products and/or services then sold or under development by Softchoice, or to cease doing business with Softchoice and not to contact or approach any such person, firm or corporation for such purpose of authorizing or knowingly approve the taking of such actions by any other person.



You also agreed, generally speaking, that when you left the employment of Softchoice, you would not solicit existing Softchoice employees or entice them to breach their own agreements.

Specifically, you agreed that you would not directly or indirectly solicit or recruit (or attempt to solicit or recruit) any employee of Softchoice (whether or not such person is a full-time employee or whether or not such employment is pursuant to a written agreement or at will) to terminate such person's employment with Softchoice, work for a third party other than Softchoice, work in self-employment or as an independent contractor, or engage in any activity that would cause any such employee to violate any agreement with Softchoice.

Please note that we will also send a copy of this letter to your new employer so that they are aware of their obligations and can effectively manage any risks your employment may present.

I encourage you to speak with me if you have any questions and to obtain independent legal advice as to the scope of your duties and obligations if you feel that is necessary.

Good luck, and we wish you continued success in your career.

Sincerely,

Maria Odoardi
VP, People
Softchoice Corporation


cc. *SHI – Human Resources*
*33 Knightsbridge Road*
*Piscataway, N.J. 08854-3925*
*Fax: 732-764-8889*

*Encl.*

*(rev'd May 2008)*





January 11, 2006

Philip H. Wilhelm
10615 Valley Forge
Houston, TX 77042

**Re:  Offer of Employment**

Dear Philip:

It is our pleasure to provide you with this offer of employment with Softchoice Corporation (hereinafter referred to as the "Company").  The position we are offering is that of an Outbound Sales Representative at a base salary of $ 40,000 per year, payable semi-monthly.  This position reports to the Branch Manager, commencing on January 30th, 2006.  You will also attend the corporate launch in Toronto on the weekend of January 6th, 2006.  Arrangements for travel and accommodation will be made separately.

Your working hours will be in accordance with the department's schedule from Monday to Friday.  The Company shall review your performance on a semi-annual and annual basis. We will provide you with an Employee Handbook, which describes policies and practices applicable to all employees.

<u>**Terms and Conditions**</u>:

**Compensation:**

Commissions are calculated on a monthly basis according to the standard Softchoice Compensation Plan. This offer is contingent upon favorable references, including confirmation of information stated on the employment application. **In addition there will be a non-recoverable draw of $1,000 per month, for the first 5 months.  If your gross commissions during the first 5 months of your agreement were to be below the draw amount, the difference will be added to your gross commissions for that month.  But, if you were to earn more gross commissions than the draw amount in any given month of the 5 months agreed upon, no draw will be paid during that month.**

**Benefits:**

The health benefit plan offered at Softchoice is medical, dental, vision, life insurance, and accidental death & dismemberment insurance and is available upon date of hire.  Eligibility for the mandatory short term disability insurance begins after six (6) months of continuous employment with the Company and eligibility for participation in the mandatory long term disability insurance begins after three (3) months of continuous employment with the Company. To be covered by these insurance policies requires completion of the necessary enrollment paperwork.

1

PHW



**Important Benefit
Requirement**

> **United Health Care, our medical insurance carrier, now requires a copy of the HIPAA Certificate of Credible Coverage so that claims are not denied as a result of a pre-existing condition or held up by an inquiry by United Health Care to determine if the claim was pre-existing. This can be obtained from your previous health insurance carrier for medical coverage.**

> There is a 401(k) Plan offered with a company match. Eligibility begins after ninety (90) days of continuous employment with the Company.

**Expenses:**

> You shall be reimbursed for all authorized traveling and other out-of-pocket expenses actually and properly incurred by you in connection with your duties hereunder. For all such expenses, you shall furnish to the Company original receipts only and shall comply with all Company expense policies.

**Vacation:**

> You shall receive up to 10 days vacation per year, to be accrued on a monthly basis. Such vacation shall be taken at a time or times acceptable to the Company having regard to its operations and business.

**Meetings:**

> This position may require that you attend all department and/or company meetings that may occur beyond regular business hours, including weekends.

**Termination of Employment:**

> Employment with Softchoice is "at will," meaning that either Softchoice or you may terminate your employment at any time for any reason whatsoever or for no reason, with or without notice.

**Confidentiality:**

> You acknowledge that by, accepting this position, you will not violate the term of any agreement applicable to you, and that you will not utilize or make available to us any confidential or proprietary information of any third party or violate any obligation with respect to such information. In addition, information you acquire during your employment with Softchoice Corporation is considered confidential and proprietary and cannot be utilized for any other purposes other than conducting business on behalf of Softchoice and you agree not to violate

2


**softchoice**

any obligation with respect to such information, whether during your employment with Softchoice or thereafter.

Please carefully review and consider the terms of the letter and, if you so desire, obtain independent advice with respect to it.  Please sign the enclosed copy and return it within three (3) business days so as to signify your acceptance of the terms of your employment with the Company.  If we do not receive a signed offer within the stated time frame this offer becomes null and void.

On a more personal note, I would like to thank you for the time you have committed to the selection process.  We are confident you will be able to make a significant contribution to the success of our organization and look forward to working with you.

Sincerely,


Rod Morreau
Branch Manager
Softchoice Corporation

I confirm that I have read, understood, and am voluntarily agreeing and accepting the terms of my employment as set out in this correspondence.  I also acknowledge that I have had an opportunity to seek independent advice with respect to this matter and that this offer is accepted and agreed to this  12  day of  January , 2006.


1-12-06
Date signed

Philip H. Wilhelm

3

PHW



*PHILIP WILHELM*



**softchoice**

To:         All US Outbound Sales Employees
Date:       October 1, 2007

We would like to take this opportunity to reiterate and clarify the expectations Softchoice Corporation ("Softchoice" or "the Company") has in place for you as a sales representative. This letter serves to remind you of, and confirm your obligations.

**Duties and Obligations**

You agree that to the best of your ability and experience, and in good faith, you will at all times loyally and conscientiously perform all of the duties and obligations required of and from you as a sales representative of Softchoice.

During the term of your employment, you will not engage in any employment, business, or activity that is in any way competitive with the business or proposed business of Softchoice, and you will not assist any other person or organization in competing with Softchoice or in preparing to engage in competition with the business or proposed business of Softchoice.

**Confidentiality:**

You understand that, during the course of your work, you have had and will continue to have access to Proprietary Information (as defined below) concerning the Company and its customers and prospective customers. You understand that the Company has developed, compiled, and otherwise obtained, often at great expense, this information, which has great value to the Company's business. You agree both during your employment and thereafter to hold in strict confidence all Proprietary Information and will not disclose any Proprietary Information to anyone outside of the Company. You further agree that you will not use, disclose copy, publish, summarize, or remove from Company premises Proprietary Information, except during your employment to the extent necessary to carry out your responsibilities as an employee of the Company.

Proprietary Information means any proprietary or confidential information or trade secrets, including, without limitation, research, product or business plans, proposals, client lists and client information, prospect lists, marketing information, software, developments, inventions, processes, formulas, technology, sales methods and systems, sales and profit figures, finances and other business information disclosed by the Company, or its clients or agents, either directly or indirectly in writing, orally or by drawings or inspection of documents or other tangible property. Proprietary Information does not include any information that has become publicly known and made generally available to the public through no wrongful act by you or another person. [Again, to specifically remind you of your obligations as a sales representative, the Company considers the following information to be included in the definition of Proprietary Information: (i) all client/customer lists and all lists or other compilations containing client, customer or vendor information; (ii) information concerning customer preferences, needs, requirements, business plans, etc.; (iii) information concerning potential customer preferences, needs, requirements, business plans, etc.; (iv) information about products, proposed products, research, product development, techniques, processes, costs, profits, markets, marketing plans, strategies, forecasts, sales and commissions; (v) plans for the future development and new product concepts; (vi) sales plans, strategies, tools, competitive advantages and disadvantages, promotional strategies, discounts, pricing, incentives and the like; (vii) the compensation, skills and terms of employment of other employees; (viii) all other information that has been or will be given to you in confidence by the Company (or any affiliate of it that might be formed).] Proprietary Information also includes any information described above which the Company obtains from another party and which the Company treats as proprietary or designates as Proprietary Information.



**Non Solicitation of Customers and Employees:**

You understand that as a sales representative, Softchoice trains you and entrusts in you Proprietary Information regarding its customers, potential customers, sales methods, products, product advantages and/or disadvantages in comparison to competitive products, customer and potential customer preferences and requirements, and the like. By confirming this with your signature, you affirm that you have accepted this trust and confidence. You acknowledge that solicitation of Softchoice employees and customers/potential customers with whom you solicited or did business with on behalf of the Company would involve the use of such Proprietary Information. Consequently, you agree that you will not, during your employment at the Company and for a period of twelve (12) months immediately following the termination of your relationship with the Company for any reason (whether voluntarily or involuntarily), either directly or indirectly, on your own behalf or in the service or on behalf of others:

(1) Directly or indirectly solicit, entice or induce any customer, potential customer or vendor referral source whom you solicited or did business with on behalf of the Company, or with whom you otherwise became acquainted as a result of your employment with the Company, to become a customer, of any other person, firm or corporation with respect to products and/or services then sold or under development by the Company or competitive with products and/or services then sold or under development by the Company, or to cease doing business with the Company and (2) Directly or indirectly solicit or recruit (or attempt to solicit or recruit) any employee of the Company (whether or not such person is a full-time employee or whether or not such employment is pursuant to a written agreement or at-will) to terminate such person's employment with the Company, work for a third-party other than the Company, work in self-employment or as an independent contractor, or engage in any activity that would cause any such employee to violate any agreement with the Company, except as required to perform your job duties for the Company.

You understand and agree that the obligations imposed are reasonably required for the protection of the Company and the goodwill associated with the business of the Company. If any obligation is for any reason held to be excessively broad as to scope, activity or subject so as to be unenforceable at law, such provision or provisions will be construed to be enforceable only to the maximum extent compatible with the applicable law.

Again, please carefully review and consider the terms of the letter. Please sign the enclosed copy and return it within three (3) business days so as to confirm your acceptance of the terms of your employment with the Company.

Sincerely,

Nick Foster
VP of People and Growth
Softchoice Corporation

I confirm that I have read, understood, and am voluntarily confirming and accepting the terms of my employment as set out in this correspondence

_____           _10-2-07_____
Signature                                          Date signed
Philip H. Wilhelm                          HOUSTON, TX
Print Name                                     Branch or Location

2





February 24, 2010

**VIA COURIER**

Philip Wilhelm
150 Gessber Road
Houston, TX United States
77024

**Re: Confidentiality and Non-Solicit Agreement with Softchoice Corporation**

Dear Philip,

We'd like to take this opportunity to remind you that, although your employment with Softchoice has ended, some of your obligations to Softchoice have not.

Without limiting in any way any other obligations that you have to Softchoice, you continue to be bound by the following:

When you were hired, you signed an Offer of Employment Agreement, dated January 11th, 2006 ("Employment Agreement"). A copy of the Agreement is enclosed with this letter. In this Employment Agreement, you acknowledged that the information you acquired during your employment with Softchoice is confidential and proprietary (some examples of this type of information are: customer lists, Outlook contacts, address lists, sales plans and strategies, and so on). You agreed that such information cannot be used for any other purpose other than conducting business on behalf of Softchoice and you agreed that you would not violate any obligation with respect to such information, both while you were employed at Softchoice **and thereafter.**

You also signed a Confidentiality and Non-Solicitation Agreement with Softchoice, dated October 1st, 2007 ("Agreement"). A copy of the Agreement is enclosed with this letter. By the terms of this Agreement, you agreed, generally speaking, that for a period of **one year** following the termination of your employment, that you would not solicit Softchoice customers when you left to join a new company.

Specifically, you agreed that you would not directly or indirectly solicit, entice or induce any client or vendor referral source whom you solicited or did business with on behalf of Softchoice (or with whom you otherwise became acquainted as a result of your employment with Softchoice) to become a client of any other person firm or corporation with respect to the products and/or services then sold or under development by Softchoice, or to cease doing business with Softchoice and not to contact or approach any such person, firm or corporation for such purpose of authorizing or knowingly approve the taking of such actions by any other person.



You also agreed, generally speaking, that when you left the employment of Softchoice, you would not solicit existing Softchoice employees or entice them to breach their own agreements.

Specifically, you agreed that you would not directly or indirectly solicit or recruit (or attempt to solicit or recruit) any employee of Softchoice (whether or not such person is a full-time employee or whether or not such employment is pursuant to a written agreement or at will) to terminate such person's employment with Softchoice, work for a third party other than Softchoice, work in self-employment or as an independent contractor, or engage in any activity that would cause any such employee to violate any agreement with Softchoice.

Please note that we will also send a copy of this letter to your new employer so that they are aware of their obligations and can effectively manage any risks your employment may present.

I encourage you to speak with me if you have any questions and to obtain independent legal advice as to the scope of your duties and obligations if you feel that is necessary.

Good luck, and we wish you continued success in your career.

Sincerely,

Maria Odoardi
VP, People
Softchoice Corporation


cc.     *SHI – Human Resources*
        *33 Knightsbridge Road*
        *Piscataway, N.J. 08854-3925*
        *Fax: 732-764-8889*

Encl.

(rev'd May 2008)



Friday, March 31, 2006

Ryan Sheehan
404 Oakcrest Drive
Cedar Park, TX 78613

**Re:  Offer of Employment**

Dear: Ryan Sheehan

It is our pleasure to provide you with this offer of employment with Softchoice Corporation (hereinafter referred to as the "Company"). The position we are offering is that of an Outbound Sales Representative at a base salary of $45,000 per year, payable semi-monthly. This position reports to the Branch Manager, commencing on May 1st, 2006.  Your working hours will be in accordance with the department's schedule from Monday to Friday.  The Company shall review your performance on a semi-annual and annual basis. We will provide you with an Employee Handbook, which describes policies and practices applicable to all employees. This offer is contingent upon favorable references, including confirmation of information stated on the employment application.

<u>**Terms and Conditions:**</u>

**Compensation:**

Commissions are calculated on a monthly basis according to the standard Softchoice Compensation Plan.  **In addition there will be a non-recoverable draw of $1000 per month, for the first 5 months.  If your gross commissions during the first 5 months of your agreement were to be below the draw amount, the difference will be added to your gross commissions for that month.   But, if you were to earn more gross commissions than the draw amount in any given month of the 5 months agreed upon, no draw will be paid during that month.**

**Benefits:**

The health benefit plan offered at Softchoice is medical, dental, vision, life insurance, and accidental death & dismemberment insurance and is available upon date of hire.  Eligibility for the mandatory short term disability insurance begins after six (6) months of continuous employment with the Company and eligibility for participation in the mandatory long term disability insurance begins after three (3) months of continuous employment with the Company. To be covered by these insurance policies requires completion of the necessary enrollment paperwork.

**Important Benefit Requirement**

**United Health Care, our medical insurance carrier, now requires a copy of the HIPAA Certificate of Credible**

1



**Coverage so that claims are not denied as a result of a pre-existing condition or held up by an inquiry by United Health Care to determine if the claim was pre-existing. This can be obtained from your previous health insurance carrier for medical coverage.**

There is a 401(k) Plan offered with a company match.  Eligibility begins after ninety (90) days of continuous employment with the Company.

**Expenses:**

You shall be reimbursed for all authorized traveling and other out-of-pocket expenses actually and properly incurred by you in connection with your duties hereunder.  For all such expenses, you shall furnish to the Company original receipts only and shall comply with all Company expense policies.

**Vacation:**

You shall receive up to 10 days vacation per year, to be accrued on a monthly basis.  Such vacation shall be taken at a time or times acceptable to the Company having regard to its operations and business.

**Meetings:**

This position may require that you attend all department and/or company meetings that may occur beyond regular business hours, including weekends.

**Termination of Employment:**

Employment with Softchoice is "at will," meaning that either Softchoice or you may terminate your employment at any time for any reason whatsoever or for no reason, with or without notice.

**Confidentiality:**

You acknowledge that by, accepting this position, you will not violate the term of any agreement applicable to you, and that you will not utilize or make available to us any confidential or proprietary information of any third party or violate any obligation with respect to such information.   In addition, information you acquire during your employment with Softchoice Corporation is considered confidential and proprietary and cannot be utilized for any other purposes other than conducting business on behalf of Softchoice and you agree not to violate any obligation with respect to such information, whether during your employment with Softchoice or thereafter.

Please carefully review and consider the terms of the letter and, if you so desire, obtain independent advice with respect to it.  Please sign the enclosed copy and

2



**softchoice**

return it within three (3) business days so as to signify your acceptance of the terms of your employment with the Company. If we do not receive a signed offer within the stated time frame this offer becomes null and void.

On a more personal note, I would like to thank you for the time you have committed to the selection process. We are confident you will be able to make a significant contribution to the success of our organization and look forward to working with you.

Sincerely,


Ryan Ford
Branch Manager - Austin
Softchoice Corporation

I confirm that I have read, understood, and am voluntarily agreeing and accepting the terms of my employment as set out in this correspondence. I also acknowledge that I have had an opportunity to seek independent advice with respect to this matter and that this offer is accepted and agreed to this          day of                    , 2006.

4/02/06
_____
Date signed

_____
Ryan Sheehan



To:         All US Outbound Sales Employees
Date:       October 1, 2007

We would like to take this opportunity to reiterate and clarify the expectations Softchoice Corporation (""Softchoice" or "the Company") has in place for you as a sales representative. This letter serves to remind you of, and confirm your obligations.

### Duties and Obligations

You agree that to the best of your ability and experience, and in good faith, you will at all times loyally and conscientiously perform all of the duties and obligations required of and from you as a sales representative of Softchoice.

During the term of your employment, you will not engage in any employment, business, or activity that is in any way competitive with the business or proposed business of Softchoice, and you will not assist any other person or organization in competing with Softchoice or in preparing to engage in competition with the business or proposed business of Softchoice.

### Confidentiality:

You understand that, during the course of your work, you have had and will continue to have access to Proprietary Information (as defined below) concerning the Company and its customers and prospective customers. You understand that the Company has developed, compiled, and otherwise obtained, often at great expense, this information, which has great value to the Company's business. You agree both during your employment and thereafter to hold in strict confidence all Proprietary Information and will not disclose any Proprietary Information to anyone outside of the Company. You further agree that you will not use, disclose copy, publish, summarize, or remove from Company premises Proprietary Information, except during your employment to the extent necessary to carry out your responsibilities as an employee of the Company.

Proprietary Information means any proprietary or confidential information or trade secrets, including, without limitation, research, product or business plans, proposals, client lists and client information, prospect lists, marketing information, software, developments, inventions, processes, formulas, technology, sales methods and systems, sales and profit figures, finances and other business information disclosed by the Company, or its clients or agents, either directly or indirectly in writing, orally or by drawings or inspection of documents or other tangible property. Proprietary Information does not include any information that has become publicly known and made generally available to the public through no wrongful act by you or another person. [Again, to specifically remind you of your obligations as a sales representative, the Company considers the following information to be included in the definition of Proprietary Information: (i) all client/customer lists and all lists or other compilations containing client, customer or vendor information; (ii) information concerning customer preferences, needs, requirements, business plans, etc.; (iii) information concerning potential customer preferences, needs, requirements, business plans, etc.; (iv) information about products, proposed products, research, product development, techniques, processes, costs, profits, markets, marketing plans, strategies, forecasts, sales and commissions; (v) plans for the future development and new product concepts; (vi) sales plans, strategies, tools, competitive advantages and disadvantages, promotional strategies, discounts, pricing, incentives and the like; (vii) the compensation, skills and terms of employment of other employees; (viii) all other information that has been or will be given to you in confidence by the Company (or any affiliate of it that might be formed).] Proprietary Information also includes any information described above which the Company obtains from another party and which the Company treats as proprietary or designates as Proprietary Information.

1



**Non Solicitation of Customers and Employees:**

You understand that as a sales representative, Softchoice trains you and entrusts in you Proprietary Information regarding its customers, potential customers, sales methods, products, product advantages and/or disadvantages in comparison to competitive products, customer and potential customer preferences and requirements, and the like. By confirming this with your signature, you affirm that you have accepted this trust and confidence. You acknowledge that solicitation of Softchoice employees and customers/potential customers with whom you solicited or did business with on behalf of the Company would involve the use of such Proprietary Information. Consequently, you agree that you will not, during your employment at the Company and for a period of twelve (12) months immediately following the termination of your relationship with the Company for any reason (whether voluntarily or involuntarily), either directly or indirectly, on your own behalf or in the service or on behalf of others:

(1) Directly or indirectly solicit, entice or induce any customer, potential customer or vendor referral source whom you solicited or did business with on behalf of the Company, or with whom you otherwise became acquainted as a result of your employment with the Company, to become a customer, of any other person, firm or corporation with respect to products and/or services then sold or under development by the Company or competitive with products and/or services then sold or under development by the Company, or to cease doing business with the Company and (2) Directly or indirectly solicit or recruit (or attempt to solicit or recruit) any employee of the Company (whether or not such person is a full-time employee or whether or not such employment is pursuant to a written agreement or at-will) to terminate such person's employment with the Company, work for a third-party other than the Company, work in self-employment or as an independent contractor, or engage in any activity that would cause any such employee to violate any agreement with the Company, except as required to perform your job duties for the Company.

You understand and agree that the obligations imposed are reasonably required for the protection of the Company and the goodwill associated with the business of the Company. If any obligation is for any reason held to be excessively broad as to scope, activity or subject so as to be unenforceable at law, such provision or provisions will be construed to be enforceable only to the maximum extent compatible with the applicable law.

Again, please carefully review and consider the terms of the letter. Please sign the enclosed copy and return it within three (3) business days so as to confirm your acceptance of the terms of your employment with the Company.

Sincerely,

Nick Foster
VP of People and Growth
Softchoice Corporation

I confirm that I have read, understood, and am voluntarily confirming and accepting the terms of my employment as set out in this correspondence

_____          10/10/07
Signature                      Date signed

RYAN Sheehan                   AuSTIN, TX
Print Name                     Branch or Location

2



April 16, 2009

**VIA COURIER**

Ryan Sheehan
404 Oakcrest Drive
Cedar Park, TX 78613

**Re: Confidentiality and Non-Solicit Agreement with Softchoice Corporation**

Dear Ryan,

We'd like to take this opportunity to remind you that, although your employment with Softchoice has ended, some of your obligations to Softchoice have not.

Without limiting in any way any other obligations that you have to Softchoice, you continue to be bound by the following:

You also signed a Confidentiality and Non-Solicitation Agreement with Softchoice, dated October 1, 2007 ("Agreement"). A copy of the Agreement is enclosed with this letter. In this Agreement, you acknowledged that the information you acquired during your employment with Softchoice is confidential and proprietary (some examples of this type of information are: customer lists, Outlook contacts, address lists, sales plans and strategies, and so on). You agreed that such information cannot be used for any other purpose other than conducting business on behalf of Softchoice and you agreed that you would not violate any obligation with respect to such information, both while you were employed at Softchoice **and thereafter**.

Also, by the terms of this Agreement, you agreed, generally speaking, that for a period of **one year** following the termination of your employment, that you would not solicit Softchoice customers when you left to join a new company.

Specifically, you agreed that you would not directly or indirectly solicit, entice or induce any client or vendor referral source whom you solicited or did business with on behalf of Softchoice (or with whom you otherwise became acquainted as a result of your employment with Softchoice) to become a client of any other person firm or corporation with respect to the products and/or services then sold or under development by Softchoice, or to cease doing business with Softchoice and not to contact or approach any such person, firm or corporation for such purpose of authorizing or knowingly approve the taking of such actions by any other person.



You also agreed, generally speaking, that when you left the employment of Softchoice, you would not solicit existing Softchoice employees or entice them to breach their own agreements.

Specifically, you agreed that you would not directly or indirectly solicit or recruit (or attempt to solicit or recruit) any employee of Softchoice (whether or not such person is a full-time employee or whether or not such employment is pursuant to a written agreement or at will) to terminate such person's employment with Softchoice, work for a third party other than Softchoice, work in self-employment or as an independent contractor, or engage in any activity that would cause any such employee to violate any agreement with Softchoice.

Please note that we will also send a copy of this letter to your new employer so that they are aware of their obligations and can effectively manage any risks your employment may present.

I encourage you to speak with me if you have any questions and to obtain independent legal advice as to the scope of your duties and obligations if you feel that is necessary.

Good luck, and we wish you continued success in your career.

Sincerely,

Kirsten Thompson
Corporate Counsel
Director, Legal and Corporate Affairs

cc.     SHI – Human Resources
        33 Knightsbridge Road
        Piscataway, N.J. 08854-3925

Encl.

(rev'd May 2008)





January 12, 2007

Ryan Ford
Austin

Re: Promotion Offer

Dear Ryan:

I am pleased to offer you a promotion to District Sales Manager with Softchoice Corporation (hereinafter referred to as the "Company"), effective January 2, 2007. In our mind, this promotion reflects a strikingly different level of responsibility and we are delighted to offer this to you at this time. The entire management team is confident in your success.

Your compensation plan is based on a ratio of 65% salary and 35% bonus. This is standard for leadership roles in sales.

Your compensation plan includes a Long Term Incentive Plan that reflects our belief that your results affect the bottom line of our company.

Our change this year to create the position of District Sales Manager where you will have a full-time management responsibility reflects our desire to directly impact employee retention through dedicated coaching and mentoring activities. Your highest priority is to develop your people through setting high standards and achieving the objectives set out in your plan.

**Terms and Conditions:**

| | |
|---|---|
| Reporting to: | Doug Stabenow, **Regional Sales Director** |
| Salary: | $71,500 per year, payable semi-monthly in US dollars, on the 15th and the last day of the month. Your targeted bonus is $38,500 and will be achieved when you reach objectives which will be set out by Steve Leslie. The bonus will be earned and paid semi-annually in accordance with your bonus plan objectives. |
| Car/Cell Allowance: | You shall be paid a monthly car/cell allowance of **$525.00**. This payment will be made on the last day of each month. |
| Benefits: | Vacation entitlement, etc will remain unchanged. |
| Expenses: | Expense plan will remain unchanged. |
| Confidentiality: | You acknowledge that by, accepting this position, you will not violate the term of any agreement applicable to you, and that you will not utilize or make available to us any confidential or proprietary information of any third party or violate any obligation with respect to such information. In addition, information you acquire during your employment with Softchoice Corporation is considered confidential and proprietary and cannot be utilized for any other purposes other than conducting business on behalf of Softchoice and you agree not to violate any obligation with respect to such information, whether during your employment with Softchoice or thereafter. |

**Non-Solicitation of Clients and Employees:**

I agree that I shall not, during my employment at the Company and for a period of twelve (12) months immediately following the termination of my relationship with the Company for any reason (whether voluntarily or involuntarily), either directly or indirectly, on my own behalf or in the service or on behalf of others:

(i)   Directly or indirectly solicit, entice or induce any client or vendor referral source whom I solicited or did business with on behalf of the Company, or with whom I otherwise became acquainted as a result of my employment with the Company, to become a client, of any other person, firm or corporation with respect to products and/or services then sold or under development by the Company or competitive with products and/or services then sold or under development by the Company, or to cease doing business with the Company, and I shall not contact or approach any such person, firm or corporation for such purpose or authorize or knowingly approve the taking of such actions by any other person; or

(ii)  Directly or indirectly solicit or recruit (or attempt to solicit or recruit) any employee of the Company (whether or not such person is a full-time employee or whether or not such employment is pursuant to a written agreement or at-will) to terminate such person's employment with the Company, work for a third party other than the Company, work in self-employment or as an independent contractor, or engage in any activity that would cause any such employee to violate any agreement with the Company, except as required to perform my job duties for the Company;

Paragraph (i) will not apply and will not be enforced by the Company with respect to post-termination solicitation of clients or vendor referral sources by me that occurs in California and does not involve my use of trade secrets or confidential proprietary information.

If I violate or am in breach of any provision of the Paragraphs (i) & (ii) above, then the provisions of this Paragraphs (i) & (ii) shall be applicable to me for an additional period of twelve (12) months after the date of such violation or breach.

Please carefully review and consider the terms of the letter and, if you so desire, obtain independent advice with respect to it. Please sign the enclosed copy and return it within three (3) business days so as to signify your acceptance of the terms of your employment with the Company. If we do not receive a signed offer within the stated time frame this offer becomes null and void.

Congratulations on this promotion, Ryan. I, along with the entire management team, am confident that you will continue to make a significant contribution to the success of the company.

Yours truly,


Doug Stabenow
Regional Sales Director
Softchoice Corporation

cc: Steve Leslie

I confirm that I have read, understood, and am voluntarily agreeing and accepting the terms of my employment as set out in this correspondence. In addition, I have also read and will comply with the terms of the attached Code of Conduct. I also acknowledge that I have had an opportunity to seek independent advice with respect to this matter and that this offer is accepted and agreed to this *9th* day of *February*, 2007.


2/9/07
Date signed

Ryan Ford

**Softchoice Corporation**
**Code of Conduct**

It is our intention to operate our business with the highest level of integrity, respect and ethics. We embody this intention in our values. They are:

- We have customer passion
- We Get it done . . .differently
- We take care of each other
- We are in it for the growth

Further, our employees tell us that it is important to them that they work for a company with high ethical standards. This document will help us all to avoid confusion or misunderstanding regarding appropriate business ethics and behaviour. This code applies to all employees of Softchoice, as well as independent contractors and members of the Board of Directors. If you are worried about the implications of anything in this document, just ask your supervisor, manager, or anyone in HR.

Principles of Business Conduct

This list provides examples of ethical business conduct. It not an exhaustive list, but should provide examples of appropriate ethics in business.

We will:
- comply with all laws, regulations, Company policies and procedures,
  - For example, agreeing with a customer that a purchase order is cancelable or giving extended payment terms without proper authorization would be against Company policies.
  - Talking to the media or anyone in the investment community about our financial results would violate our Disclosure Policy.
  - Down-loading films or music would be in contravention of our policies on the appropriate use of the internet.
- respect the lives, rights, privacy and property of others,
- avoid conflicts of interest,
  - For example, agreeing to accept a vacation trip or other type of benefit or gift from a local VAR as a result of agreeing to a non-compete agreement or a specific fee arrangement would represent a conflict of interest and a violation of Company policies.
  - Changing how customer masters are applied to sales reps so that a sales rep can receive compensation on a certain deal, would also be an example of a conflict of interest.
  - Developing a romantic relationship with a subordinate or a direct customer, would be another example of developing a conflict of interest
  - Involvement in or investing in a competing business would create a conflict of interest situation.
- sustain and foster a culture in which ethical conduct is valued,
  - This is why we celebrate the "WOWs" that exemplify our values.
- maintain a safe and healthy work environment
- maintain a work environment that is free from any type of discrimination or harassment,
- foster an environment that encourages open communication and seeks out, listens and responds to ideas and concerns,
  - sometimes it is really difficult to listen to the dissenting voice or someone who disagrees with a strategy or approach. These are the people we should try to listen to and incorporate their feedback so that all points of view are heard and valued.
- discuss and portray our competitors fairly and accurately,
- use resources, material and energy as efficiently and responsibly as possible,
- recognize the contents of our systems, such as customer lists or transaction details, belong to the Company, not individual employees, and cannot be transferred outside the Company;
  - For example: if you leave the Company, do not take customer lists or transaction information.
- keep details about our business, our customers or our suppliers as confidential.

- o For example, discussing our Company with competitors, including financial results, compensation plans, or general business strategies would break Company confidentiality.
- refrain from any transactions outside the normal course of business, unless explicitly approved at the director level, and
- manage compliance with this Code of Conduct as any other critical business activity.
  - o For example, reporting a fellow employee under this Code of Conduct with false information or with malicious intent would be inappropriate.

It is not always easy to identify whether a course of action is ethical or not. If you are in doubt about the correct course of action, you should discuss it with your manager, director or someone in H.R.

## Compliance with the Code of Conduct

All employees are required to comply with the Code of Conduct. If you are faced with a situation and you are uncertain as to the correct course of action, you should discuss this with your manager, a member of the Human Resources Team, a director of your department or area or a member of the SLT. If you believe that you are aware of a violation of this Code of Conduct, it is your responsibility to report this violation fully and completely. How to report potential violations of this Code of Conduct is outlined in the Whistle Blowing Policy.

## Violations of the Code of Conduct

Failure to follow the Code of Conduct could lead to disciplinary action up to and including termination of employment. If the violation is materially harmful to the Company and was willfully or maliciously undertaken, then legal action may also be considered.



# COPY



April 20, 2008

**VIA COURIER**

Ryan Ford
1703 Travis Heights Blvd.
Austin, TX 78704

**Re: Confidentiality and Non-Solicit Agreement with Softchoice Corporation**

Dear Mr. Ford,

Congratulations on your new employment - we wish you success in your future endeavours.
We'd also like to take this opportunity to remind you that, although your employment with Softchoice has ended, some of your obligations to Softchoice have not.

Without limiting in any way any other obligations that you have to Softchoice, you continue to be bound by the following:

When you were promoted to District Sales Manager, you signed a Confidentiality and Non-Solicitation Agreement with Softchoice dated January 12, 2007 ("Agreement.") A copy of the Agreement is enclosed with this letter. By the terms of this Agreement, you agreed, generally speaking, that for a period of **one year** following the termination of your employment, that you would not solicit Softchoice customers when you left to join a new company.

Specifically, you agreed that you would not directly or indirectly solicit, entice or induce any client or vendor referral source whom you solicited or did business with on behalf of Softchoice (or with whom you otherwise became acquainted as a result of your employment with Softchoice) to become a client of any other person firm or corporation with respect the products and/or services then sold or under development by Softchoice, or to cease doing business with Softchoice and not to contact or approach any such person, firm or corporation for such purpose of authorizing or knowingly approve the taking of such actions by any other person.

You also agreed, generally speaking, that when you left the employment of Softchoice, you would not solicit existing Softchoice employees or entice them to breach their own agreements.



Specifically, you agreed that you would not directly or indirectly solicit or recruit (or attempt to solicit or recruit) any employee of Softchoice (whether or not such person is a full-time employee or whether or not such employment is pursuant to a written agreement or at will) to terminate such person's employment with Softchoice, work for a third party other than Softchoice, work in self-employment or as an independent contractor, or engage in any activity that would cause any such employee to violate any agreement with Softchoice.

Finally, you acknowledged that the information you acquired during your employment with Softchoice is confidential and proprietary (some examples of this type of information are: customer lists, Outlook contacts, address lists, sales plans and strategies, and so on). You agreed that such information cannot be used for any other purpose other than conducting business on behalf of Softchoice and you agreed that you would not violate any obligation with respect to such information, both while you were employed at Softchoice **and thereafter**.

Please note that we will also send a copy of this letter to your new employer so that they are aware of their obligations and can effectively manage any risks your employment may present.

I encourage you to speak with me if you have any questions and to obtain independent legal advice as to the scope of your duties and obligations if you feel that is necessary

Sincerely,

Kirsten Thompson
Corporate Counsel
Director, Legal & Corporate Affairs

cc.     *SHI – Human Resources*
        *33 Knightsbridge Road*
        *Piscataway, N.J. 08854-3925*
        *Fax: 732-764-8889*

*Encl.*

JS 44 (TXND-Rev. 2/10)   CIVIL COVER SHEET
ORIGINAL

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Softchoice Corporation

**DEFENDANTS**

SHI International Corporation, Michael Britton, Heath Fiedler, Josh Fruehan, Phil Wilhelm, Ryan Sheehan and Ryan Ford

**(b)** County of Residence of First Listed Plaintiff   Cook County, Illinois
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Middlesex, New Jersey
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

(see attached)

Attorneys (If Known)

RECEIVED
OCT - 7 2010
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332

Brief description of cause:
Breach of Nonsolicitation and Confidentiality Agreements and Related Torts

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $   over $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) PENDING OR CLOSED:   (See instructions)

JUDGE _____   DOCKET NUMBER _____

DATE   10/7/10

SIGNATURE OF ATTORNEY OF RECORD   Patrick J. Mc( )

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

Patrick J. Maher
Shannon, Gracey, Ratliff & Miller, L.L.P.
777 Main Street, Suite 3800
Fort Worth, TX  76102

817-877-8167

Arturo J. Gonzalez
Eric A. Tate
Morrison & Foerster LLP
425 Market  Street
San Francisco, CA  94105-2482

415-268-7000